MARIANA HARRIS, Administratrix, &c. of CHARLES T. HAR-
RIS, deceased, *v.* HAMILTON MURRAY and others.

A sheriff can not, upon an execution issued in an attachment suit brought
against the members of a limited partnership, levy upon, and sell, the
right, title and interest of a special partner in the goods, chattels, assets
and accounts of the firm.

The rule that a mere irregularity will not render a sale upon execution
invalid, provided the execution is valid, does not apply where a sale has
been made of something which the sheriff had no authority to sell. In
such cases the attempt to obtain possession of the thing sold may be
resisted by showing that the sheriff had no authority to make the sale.
The one is a want of jurisdiction; the other is a mere irregularity.

Where a sheriff is selling the interest of a special partner, in the property
of a limited partnership, the purchaser is bound to know that such sale is
illegal. Hence it is not necessary for the special partner, though present,
to give any notice.

More especially is such notice unnecessary if the purchaser is himself a
partner in the firm.

A levy upon the interest of a special partner in the property of the firm,
upon attachments, will not deprive such partner of his interest, or the
right to an account, or prevent him from collecting any surplus remaining
over and above such claims as the sheriff has, upon it.

IN April, 1854, Nathaniel Dougherty, as general partner,
and Eliza Harris, Charles T. Harris and Hamilton Murray,
as special partners, formed a limited partnership to continue
until 1857. At the same time another agreement was entered
into between the same parties by which Charles T. Harris
agreed to pay off certain notes theretofore given by him, as
they matured, and not to incur any further obligation in the
form of a note or other security, without the written consent
of the other partners, and in case of violating such agree-
ment his right to an interest in the profits as special partner
should thenceforth cease.

In November, 1854, the sheriff, under two executions
against Charles T. Harris, sold the right, title and interest
of Charles T. Harris in the property of the firm. The sale

was on the steps of the city hall, and none of the property sold was in view of the sheriff or parties, at the time. The defendant Hamilton Murray became the purchaser. All the partners except Eliza Harris were present at the sale, and the whole was sold in one lot or parcel.

The executions under which the sale was made were issued in actions commenced by attachment, one of which was produced on the trial.

The validity of the sale was denied, on the ground that the same was irregular and void because rights in action could not be sold, and because the property sold was not in view of the parties at the time of the sale, and was not sold in parcels.

The defendant moved for a dismissal of the complaint, which was granted. The court found the facts as above stated, and as law that the sale was valid, and dismissed the complaint. This judgment was affirmed by the general term.

*George W. Parsons*, for the appellant.

*S. S. Harris*, for the respondent.

INGRAHAM, J. There is no finding by the court, nor was any evidence offered to warrant the conclusion that the sale was made on any understanding as claimed by the plaintiff. Such understanding and alleged agreement is denied by Murray in his answer, and if the plaintiff expected any benefit therefrom, evidence to prove the same should have been offered.

The main question in the case is, whether the sale under the executions was valid. The property sold was "the right, title and interest of Harris, which he had on the 31st of August, 1854, or at any time afterwards, in the goods, chattels, assets and accounts of the firm of N. Dougherty at No. 101 Water street."

The plaintiff presents two grounds of objection to the

sale. 1st. That the sheriff could not sell under an execution an interest in choses in action. 2d. That the sheriff could not sell personal property under an execution unless the same was in view at the time of sale, and then he should have sold the same in parcels.

It must be remembered that this was not a general partnership, but was formed under the statute authorizing limited partnerships, and the interest sold was that of one of the limited partners. This statute prohibits any interference by the special partner with the management of the property of the firm, or the withdrawal of any part of the original capital and even of the receipt of interest on his advances, if such payment would reduce the original amount of such capital.

As the special partners can not interfere with the property or take the control from the general partners, it follows that the sheriff on an execution has no such power. He can not, on an execution against such partner, do any thing with the partnership property that the special partner could not do. He therefore would have no authority to take from the general partners the partnership property, for the purpose of selling the interest of the special partner in the property and assets of the firm; nor could he, as in the case of other partnerships, sell the interest of one partner in the property of the firm and deliver the property in which such interest is sold to the purchaser. All that the sheriff, under such circumstances, could sell would be the interest of the special partner, if such interest could be sold under an execution. This question was fully examined in this court in *Stief* v. *Hart*, (1 Comst. 20,) in regard to property pledged by the debtor, so far as related to the right of the sheriff to take the property out of the possession of a party entitled to the exclusive possession of it. In that case the property was pledged by the judgment debtor. The sheriff levied upon the interest of the pledgor, and took the possession of the property from the pledgee, who brought replevin. The cir-

cuit judge charged in favor of the right of the sheriff to take such possession. The judges of this court were equally divided upon the question, and the judgment below was affirmed. Those judges who sustained the right of the sheriff to take the possession did so upon the ground that the 20th section of the statute (2 R. S. p. 366) expressly authorized a levy on and sale of the right and interest of the pledgor in the goods pledged, and that the 23d section required the same to be present at the time of sale. From the opinions delivered by the judges, I think it may fairly be inferred that none of them held the rights of the sheriff to take the property out of the possession of a party having the exclusive right of possession would have existed independent of the authority conferred by the 20th section, and as that authority is limited to the case of goods pledged, the law as to taking such property out of the possession of a party entitled solely thereto remains unchanged.

And in *Mattison* v. *Baucus*, (1 Comst. 295,) GARDINER, J. while admitting that the interest of a mortgagor in personal property was subject to levy and sale under an execution, placed his decision upon the ground that the right to the possession for a limited period was in the mortgagee. But where by the express terms of the mortgage the mortgagee was entitled to the possession, he held the interest of the mortgagor to be a mere chose in action, not the subject of levy and sale under execution. (See also *Marsh* v. *Lawrence*, 4 Cowen, 467.) In *Hull* v. *Carnley*, (11 N. Y. Rep. 501,) the same distinction is recognized, and the cases which hold that possession in such cases is necessary to give validity to the levy are approved.

It must be conceded that under the law as it was before the code, mere choses in action were not the subject of levy and sale under execution. The interest of Harris in the property of a limited partnership can hardly be said to be an interest in the property of the firm. He advanced to the firm

a sum of money which he is entitled to receive back with interest at the termination of the partnership. He is also entitled to a share in the profits. But he is to no further extent the owner of the property. Upon payment of these claims the property would belong to the general parties.

By the 291st section of the code the existing provisions of law relating to property liable to sale on execution are made applicable to the executions issued by virtue of that act, except when in conflict therewith. There is nothing in the code which would be in conflict with the law on this subject. The code, it is true, (§ 234,) provides for a levy by attachment on all species of personal property, but the 235th section prescribes the mode of enforcing such attachments; and the 237th section directs how choses in action are to be applied to the payment of judgments by the sheriffs. In no case does it specifically provide for the sale of any such right of action.

There are many reasons why such a sale should not be sanctioned. The value of such an interest can never be known or disclosed to purchasers at the time of sale, and if the law directs that personal property shall not be sold under execution, except the same is present and can be seen by the purchasers, surely the same principle requires a different mode of disposing of an unsettled claim against a firm than to sell it by sheriff's sale. No purchaser, unless one interested in the partnership, could know or ascertain its value, and such a mode of disposition would be a sacrifice of an interest in a firm very inconsistent with a due administration of justice.

It is said, however, that whether the sale was regular or irregular is immaterial, because the executions were valid. That would undoubtedly be so if it was a mere irregularity in the sale, and the remedy would be by motion to set aside the sale. But that rule does not apply where the sale has been made of something which the sheriff had no authority to sell. In such cases the attempt to obtain possession of the thing sold may be resisted by showing that the sheriff had

no authority to make the sale. The one is a want of jurisdiction; the other a mere irregularity.

It is also insisted that Harris was estopped from objecting to the validity of the sale because he was present and suffered the sale to proceed without objection. There are two sufficient answers to this objection. The one is that Harris had no knowledge which he withheld so as to induce others to act who would not have done so if he had communicated the same at the sale. It was apparent on the face of the sheriff's notice. He was selling an interest in partnership property. The purchaser ought to have known, as well as Harris, that such sale was illegal; and it was therefore unnecessary for Harris to give any notice. The other reason is that Murray, who seeks to avail himself of the sale, was a partner, and had all the knowledge which Harris had. There was nothing to communicate to Murray on this subject, which would have prevented his action, in purchasing at the sale, and which was not known to him at the time.

Nor did the fact of a levy having been made under the attachment deprive Harris of his interest in the firm. There had been no appropriation of that interest by the sheriff. The accounting would of course be subject to any claim which the sheriff could make upon it, but did not deprive Harris of his interest, or prevent him from collecting any surplus over such claims as the sheriff had upon it.

I am of the opinion that the judgment should be reversed, and a new trial ordered; costs to abide the event.

Denio, Ch. J. The judgment appealed from can not be sustained on the ground on which it was placed by the general term of the Supreme Court in the opinion of Mr. Justice Clerke. His position was that there was a fatal variance between the statements of the complaint and the position on which the plaintiff sought to recover; that the complaint counted solely on a trust arrangement by which the defendant Murray agreed to use the judgment for the benefit of

C. T. Harris, the original plaintiff, and that this alleged
agreement not having been proved, the plaintiff could not
avail himself of the nullity of the sale if it were really void.
The scope of the complaint was that the plaintiff had an
interest as a special partner in the firm of Dougherty; that
the copartnership had expired by its own limitation; that
Murray claimed that he had purchased the interest of the
plaintiff and was not therefore bound to account to or pay
him anything, and that the defendant Dougherty acquiesced
in that view and denied the plaintiff's rights. The princi-
pal ground relied on in the complaint no doubt is that the
defendant Murray was estopped from purchasing on his own
account by reason of that agreement; but it was not ad-
mitted that any sale had in fact been made, but only that
the defendant pretended that there was one. If it appears
that the alleged sale was void so that no title passed thereby,
there is nothing to preclude the plaintiff from having an
account of the copartnership, or the value of his interest.
The conceded fact entitled him to an account or to the money
he had invested and the interest, unless the plaintiff had been
divested of that property by a valid sale. Whether the for-
mer sale was inoperative on account of its inherent invalidity,
or on account of an estoppel growing out of the alleged trust
agreement, was not material. His suit was for an account
and payment of his interest, and he was clearly entitled to
that relief, unless Murray had acquired his rights by a sale
legally and equitably operative. The suit was tried on the
theory that the result depended on the validity of the sale.
This is apparent from the defendant's motion to dismiss the
action on the ground that the complaint admitted a sale, and
from the finding of the referee that the sale passed all the
interest of the plaintiff to Murray. The interest of the plain-
tiff in the firm of Dougherty was not tangible property, and
could not be sold under an ordinary writ of *fieri facias.* It
was in the nature of a thing in action which may be subjected
to the payment of the debts of the owner by a proceeding

adapted to such a case; and the sole question is whether such
an interest was vendible under an execution except in a suit
commenced against an absent debtor by attachment. The
subject of attachments against foreign corporations, and
against non-resident, absconding or concealed and fraudulent
debtors, is regulated by chapter 4 of title 7 of the code of pro-
cedure, embracing sections 227 to 243 inclusive. Besides the
special provisions made by these sections, there is a direction
that the sheriff shall proceed on the warrant of attachment
in all respects in the manner required of him by law in the
case of attachments against absent debtors. But the sale on
which the defendants rely was not made pursuant to the war-
rant of attachment, but it was made subsequently to the
issuing of execution on the judgment, and by virtue of such
execution. The provisions of the code on this subject are
singularly confused and obscure, owing apparently to an
attempt to embrace in a few brief sentences a subject re-
quiring much detail, and to assimilate the duty of the sheriff
under the attachment and the duties of trustees under the
provisions respecting trustees in attachment cases, contained
in the several statutes. Upon a careful reading of this part
of the case, I am inclined to the opinion that it was never
intended to expose interests of the nature of that which the
plaintiff had in the special copartnership to a peremptory
sale by the sheriff on execution. The sheriff can perform
certain acts under the warrant of attachment before an exe-
cution shall be issued, but after the issuing of execution his
duties are regulated by the second and succeeding subdivi-
sions of section 237 of the code. He is directed to sell under
such execution so much of the attached property, real and
personal, "except as provided for in subdivision four of this
section," as may be necessary to satisfy the balance of the
judgment. Provision is made that where the sale is "of any
rights or shares in the stock of a copartnership or associa-
tion," the sheriff shall execute to the purchaser a certificate
of sale which is to vest in him all the rights and privileges

which the debtor had. The fourth subdivision referred to as excepting certain property from the liability of a sale is as follows: "Until the judgment against the defendant shall be paid, the sheriff may proceed to collect the notes and other evidences of debt, and the debts that may have been seized or attached under the warrant of attachment, and to prosecute any bail he may have taken in the course of such proceedings, and apply the proceeds thereof to the payment of the judgment." As the code existed when this sale took place, it contained no provisions for the sale of such interests in any way; but by an amendment enacted in 1859, apparently to supply a material omission, the subdivision was made to proceed thus: "After six months from the docketing of the judgment, the court shall have power on the petition of the plaintiff, accompanied by a certain affidavit which is to state, among other things, that he has used diligence and endeavored to collect the evidences of debt in his hands so attached, and that some part of them remains uncollected, to order the sheriff to sell the same upon such terms and in such manner as shall be deemed proper." If the interest in question was embraced under the denomination of *evidences of debt* or of *debts*, there was a positive inhibition against selling it on the execution. If it was a right or share in the stock of a corporation or association, it might be thus sold. In my opinion it was in the nature of the interest first mentioned, and not of corporate stock. It was a sum of money invested in the partnership enterprise, to be reimbursed, if not lost in the business, at the end of the period during which the partnership was to continue, with any profits which had been earned, and which had not been divided. It was not payable *in presenti*, and probably not, in strictness of language, a debt at all. But it was merely held in trust for the special partner to be employed in the business mentioned in the articles, and finally returned to the special partner unless lost by the exigencies of the business. It was not a right or share in a corporation or association. The term association

is never used in legal proceedings to define a commercial partnership, general or special. But it is known that a large proportion of the banking institutions of the state are formed as associations under the general banking law, and the statutes uniformly speak of them as associations. There would be a manifest impropriety in disposing of such an interest at auction to the highest bidder. No party other than the remaining partners or their clerks would be likely to know anything respecting the solvency or the condition of the concern, and it would be likely always to fall into the hands of those parties at whatever amount they might choose to bid. The present case is an example of what would usually take place if this proceeding could be upheld. The plaintiff invested $15,000 in the copartnership on the third day of April, and in November following that money and the accumulated profits passed into the hands of his copartner Murray for $2625.00. But if I am not right respecting the general liability of this interest to a sale on execution, there is another ground upon which I feel satisfied that this purchase by Murray can not be upheld. By the instrument signed by all partners at the same time the articles for copartnership were executed, it was agreed that if the plaintiff should fail to pay his outstanding private obligations, which included the notes to Abbott, his interest in the profits as a special partner was to cease from the date of his failure to discharge such obligations, and thereafter the money contributed was to be a debt against the other partners, payable with annual interest at seven per cent on 31st of December, 1856. This instrument was given in evidence on the trial, and it showed that the plaintiff's interest was a debt in the strictest sense, and that the sheriff should have retained the evidence of it and collected the interest as it accrued, and the principal when it fell due.

In whatever light, therefore, we regard the circumstances, I am of opinion that the auction sale was a nullity, and that it passed no interest to Murray, the purchaser. The suit was

not for an accounting upon the precise footing of a debt *in numero* against the other partners; but it claimed the benefit of the plaintiff's interest in the concern, and if it was in the nature of a debt instead of the share of a partner, the plaintiff should not have been turned out of court for a variance which did not surprise or mislead any body. The plaintiff sets out the agreement under which the interest was turned into a debt, and that instrument was given in evidence on the trial without objection, and the facts which produced the conversion were proved. There is no valid pretense that Harris, the original plaintiff, was estopped by being present at the sale. He neither said or did any thing to waive his rights, or to entrap Murray, the purchaser. That person knew all the facts which went to show the invalidity of the sale, as well as the plaintiff, and both are chargeable with a knowledge of the law. It was a sale *in invitum* under pretended legal process, and the purchaser bid at his peril. If he could sustain it he got the plaintiff's money for less than one-fifth part of its amount. If the proceeding was illegal or inoperative he failed to make a great speculation. He took his chance and must abide the result.

I am of opinion that the judgment should be reversed, and a new trial awarded.

SELDEN, WRIGHT and JOHNSON, JJ. concurred in the above opinions.

DAVIS and MULLIN, JJ. were for affirmance. HOGEBOOM, J. took no part in the decision.

Judgment reversed.