(139 App. Div. 534.)

### SKOLNY et al. v. RICHTER.

(Supreme Court, Appellate Division, First Department.   July 7, 1910.)

1. PARTNERSHIP (§ 276*)—DISSOLUTION—GROUNDS.

    The dissolution of a partnership will not ordinarily be decreed except for gross misconduct, lack of good faith, or some cause which is productive of serious and permanent injury to the partnership concerned, or which renders it impracticable to carry on its business.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 623; Dec. Dig. § 276.*]

2. PARTNERSHIP (§ 376*)—DUTIES OF PARTNERS—ENGAGING IN COMPETING BUSINESS.

    For a general partner to engage, without the consent of or against the objections of special copartners, in a competing business, is an act of bad faith warranting dissolution.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 862; Dec. Dig. § 376.*]

3. PARTNERSHIP (§ 349*)—LIMITED PARTNERSHIP—STATUTORY PROVISIONS.

    Limited partnerships were unknown to the common law, and are solely creatures of statute.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 823; Dec. Dig. § 349.*]

4. PARTNERSHIP (§ 349*)—LIMITED PARTNERSHIP—STATUTORY PROVISIONS.

    The purpose of Consol. Laws 1909, c. 39, authorizing limited partnerships is to enable a person possessing capital to invest in business and acquire a share of the profits, without becoming liable generally for the firm debts, or risking more than the capital contributed, provided he does not hold himself out as a general partner, or participate actively in the business.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 823; Dec. Dig. § 349.*]

5. PARTNERSHIP (§ 376*)—LIMITED PARTNERSHIP—GROUNDS FOR DISSOLUTION.

    Consol. Laws 1909, c. 39, authorizing the formation of limited partnerships, and providing that the special partner's name cannot be used as a part of the firm name without making him liable as a general partner; that the liability of the special partner shall not exceed the amount of his actual contribution to the firm; that the general partners only may transact the business of the firm, and authorizing the special partner to examine into the state and progress of the business and advise as to its management, giving him power to loan money to the firm, and giving him the same rights and remedies as other creditors and the right to sell his interest without working a dissolution, does not prevent a special partner from engaging in a competing business, and therefore his doing so is not a ground for dissolving the partnership.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 862; Dec. Dig. § 376.*]

    Laughlin and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Joseph Skolny and others against Max Richter for dissolution of partnership. The Special Term gave judgment for plaintiffs (123 N. Y. Supp. 788), and defendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

David Leventritt (Julius Henry Cohen, on the brief), for appellant.
John Frankenheimer, for respondents.

SCOTT, J. The defendant appeals from a judgment dissolving a limited partnership, which was formed on February 5, 1906, by a written agreement between plaintiffs, who became general partners, and the defendant, who became a special partner, contributing $80,000 to the capital of the firm. Upon this contribution defendant was to receive interest at the rate of 6 per cent. and one-sixth of the profits. The copartnership was to commence on the 10th day of February, 1906, and to terminate on December 1, 1911. The articles are drawn at great length and with much detail, but are qualified and governed by the last paragraph in which it is expressly agreed that the statutes relating to limited partnerships shall be taken and deemed a part of the agreement, and that everything inconsistent with or not in accordance with said statutes shall be null and void, and the provisions of such statutes shall govern. In considering the rights and obligations of the general partners and the special partners as between themselves we shall therefore find it necessary to consider only the limited partnership law, referring to the copartnership agreement only by way of illustration of the provisions of the statute. The title of the firm was Joseph Skolny & Co. That firm had in its employ two persons; one named David H. Sinclair who had charge of the office and accounts, and the other Lewis E. Remington who was a salesman covering a large territory. That evidence shows that the relation between these employés and the general partners of Skolny & Co., had become somewhat strained, and in December, 1908, these two employés determined to form a copartnership for the purpose of carrying on a similar business to that of Skolny & Co., to wit, the manufacture of juvenile clothing. A proposition was made to defendant to become a special partner in the copartnership to be formed by Remington and Sinclair, and that he contribute to the capital thereof the sum of $25,000. Before finally accepting, defendant advised the general partners of Skolny & Co., of the proposition which had been made to him, and of his disposition to accept it, unless the Skolnys would consent to an extension of their copartnership agreement.

This action on the part of defendant is severely criticized by plaintiffs, but, as we consider, without any reason. The defendant's contribution to the capital of the Skolny firm was a mere matter of business investment, and the firm had prospered and made large profits. Not unnaturally defendant was desirous of prolonging so profitable an investment; and failing that could not be censured for looking for other opportunities to invest. The Skolnys declined to consent to an extension of their copartnership arrangement stating that they were already prepared to pay back defendant's contribution to the capital of the firm when the copartnership should expire by limitation. The learned justice at Special Term found as a matter of fact that the plaintiffs did not at any time consent to or acquiesce in the defendant's act in becoming a special partner in the firm of L. E. Remington & Co., composed of Remington and Sinclair. A contrary

finding would probably have been justified by the proof, because the evidence indicates that plaintiffs' opposition to defendant's declared purpose to join the new firm was of the slightest. The case does not however, in our opinion, turn on the question whether or not plaintiffs did in fact consent or object. For the purposes of this appeal we may assume that they did not consent. The real question resolves itself to this: Whether a special partner in a limited partnership commits a breach of his copartnership obligation by becoming contemporaneously a special partner in another limited partnership conducting a similar or competing business. In a certain sense subsidiary to this question is a second: Whether such a breach of obligation, if it be a breach, justifies a judgment dissolving the first partnership as the suit of the general partners. A dissolution is the most far-reaching and radical remedy between partners, and a court of equity will not force partners into a dissolution if justice can be done without resorting to this extreme step (Berolzheimer v. Strauss, 51 N. Y. Super. Ct. 96; Collyer on Partnership, §§ 339–345; Lindley on Partnership, 752, 753). Speaking generally a dissolution will not be decreed except for gross misconduct, lack of good faith or some cause which is productive of serious and permanent injury to the partnership concerned, or renders it impracticable to carry on the business. The plaintiffs recognizing this general rule seek to justify and uphold the judgment therein by frequent reiteration that the relation between the parties to this action is a partnership and is so declared by statute, that the utmost good faith towards each other is a sine qua non of the relation between partners, and that engaging in a competing business without the affirmative consent of the other copartners is a breach of good faith. Similarity of terminology does not always establish identity in meaning or in the rules of law affecting the subjects similarly named. Whether a given act is one of good faith or bad faith depends upon the duty which rests upon the actor, and whether any particular act upon the part of one member of a copartnership is indicative of good faith towards his copartners, must be determined by the nature and extent of the obligations which the one partner has assumed towards the others. That it would be an act of bad faith on the part of one general partner to engage without the consent of, or against the objections of his copartner in a competing business, is undoubtedly true, and the question now to be considered is whether the same rule is to be applied to a special partner. Limited partnerships in this state are solely creatures of statute. They were unknown to the common law and were not known in England until an act authorizing their formation was passed in 1907. The history of this form of copartnership is traced by the late Surrogate Bradford in Ames v. Downing, 1 Bradf. Sur. 321, and furnishes most interesting and instructive reading. It will serve our present purpose however to confine ourselves to the statute which authorizes and regulates such partnerships in this state. The first act was passed in 1822 (chapter 244, Laws 1822), it was amended from time to time and finally cast in its present form in 1897 (chapter 420), being now found in chapter 39 of the Consolidated Laws of 1909. The general purpose of the statute was thus expressed by

the Court of Appeals in Fifth Ave. Bank v. Colgate, 120 N. Y. 381, 24 N. E. 799, 8 L. R. A. 712:

"The policy of the law was to bring into trade and commerce funds of those not inclined to engage in that business who were disposed to furnish capital upon such limited liability with a view to the share of profits which might be expected to result to them from their use."

Stated in general terms the purpose of the act is to enable a person possessing capital to invest in business and to reap a share of the profits of the business, without becoming liable generally for the debts of the firm, or risking in the venture more than the capital contributed, provided he does not hold himself out as a general partner, or participate actively in the conduct of the business. The two most prominent, and indeed the distinguishing, characteristics of a general partnership are that each partner is liable for all the debts of the firm, and that each partner is the agent of the firm and competent to bind it in all transactions within the scope of the partnership business. Neither of these characteristics is applicable to a special partner. He is not liable for any of the debts of the firm, except to the extent of his contribution of capital, and has none of the attributes of an agent and cannot bind the copartnership in any way. It is apparent therefore, that in these particulars, at least, a limited partnership differs radically from a general partnership; that the duties and obligations of a special partner are different from those of a general partner, and that different rules of conduct apply to them. The only question is as to the extent of those differences. There is little to be found in the books as to the relations and obligations of general and special partners as between themselves. Many cases may be cited as to the relations between special partners and firm creditors, and as to what will and what will not charge a special partner with the obligations of a general partner. These, however, throw little light upon the question now before us, and the expressions to be found in those cases to the effect that a special partnership is nothing more than a general partnership with certain limitations, and the like, are to be read and understood with respect to the particular question under consideration, to wit, the relation of special partners to firm creditors. The special partnership act also deals chiefly with the limitations placed upon a special partner with reference to the firm business and creditors. The most striking feature of the relation of a special partner to the copartnership is its detached and impersonal character which accentuates sharply its dissimilarity from the relations of a general partner. The special partner must make his contribution to the firm's capital in cash, and the amount of his contribution must be stated in the certificate of partnership. His name may not be used as a part of the firm name, and if it is used he becomes liable as a general partner. Section 35. These provisions are evidently inserted so that the firm may not trade upon the credit to be gained from the personality of the special partner, but only upon that to be gained from his actual cash contribution. By section 36 the general partners are made jointly and severally liable, but the special partner is freed from liability beyond his actual contri-

bution. Section 37, which provides generally what a special partner may or may not do, reads as follows:

"Except as provided in this section, the general partners only may transact the business of 'the partnership, and they shall be liable to account to each other and to the special partners for their management of the business, as others partners are by law. Except as provided in this section, a special partner may not sign for the partnership nor bind the same, nor transact any business on account of the partnership, nor be employed for that purpose, as agent, attorney or otherwise. A special partner may, from time to time, examine into the state and progress of the partnership business, and advise as to its management; may loan money 'to, and advance and pay money for the partnership, may take and hold the notes, drafts, acceptances and bonds of or belonging to the partnership, as security for the repayment of such money and interest, and may use and lend his name and credit as security for the partnership in any business thereof, and has the same rights and remedies in these respects as other creditors might have; may lease to the general partners any real or other property for the purpose of partnership, at such rents and on such terms as may be agreed on; and may negotiate sales, purchases and other business for the partnership, but no business so negotiated is binding on the partnership until approved by a general partner. If a special partner interfere contrary to those provisions, he shall be deemed and be liable as a general partner. If such partnership becomes insolvent or bankrupt a special partner shall not, except for claims contracted in pursuance of this section, be allowed to claim as creditor, until the claims of all the other creditors of the partnership are satisfied."

It will be seen that the sole part that a special partner may take in the conduct of the business, which any stranger could not take, is to examine from time to time into the state and purposes of the business, and advise as to its management. The extent of the inquiry that he may make, if opposed by the general partners is not specified and need not now be considered. As to advice, the statute merely allows him to tender it, and imposes no obligation upon him to offer, or upon the general partners to accept, it. In all other respects the section puts him in the position of a stranger to the firm. He may not sign for the partnership nor bind it, nor transact any business on its account, or be employed for that purpose as agent, attorney, or otherwise. In short he may not in his right as a partner, or even by direct authority of his copartners, become the agent of the firm for any purpose. He may *negotiate* sales, purchases, and other business, but cannot carry such negotiations to the point of binding the firm, which can be done only by a general partner possessing the power of general agency for the firm. Thus every attribute which is peculiar to a general partner as such is denied to a special partner. This is strikingly exemplified in the effect of the death of a special partner upon the continuance of the firm. So far as general partners are concerned, the death of one terminates the partnership, unless special provision to the contrary is made in the articles. It was held in Ames v. Downing, supra, that the same result followed upon the death of a special partner, and in 1857 the Legislature expressly so provided. Chapter 414. But in the following year a contrary rule was established (chapter 289, Laws 1858), and has prevailed ever since. The most striking and conclusive evidence however of the impersonal relation of a special partner to the firm is to be found in section 41, reading as follows:

"Any special partner or the legal representatives of any such partner, deceased, may sell his interest in the partnership, without working a dissolution thereof, or rendering the partnership general, if a notice of such sale be filed within ten days thereafter in the office of the clerk with whom the original certificate of partnership was filed, and the purchaser thereof thereupon becomes a special partner with the same right as an original partner."

If a special partner or his representatives may sell his interest in the firm to any stranger, without the consent of the general partners, it certainly follows that no element of mutual trust and confidence enters into the relationship between a special partner and his general partners, for not only may the interest be sold, but the purchaser assumes the position of the vendor, and by the act of purchase *becomes* a special partner in the firm. Recognizing the force of this argument the plaintiffs insist there should be read into the section a proviso that such a sale may be made only with the consent of the general partners. It is a sufficient answer to say that the whole law of special partnership is statutory, and that the statute does not require such a consent, but attaches upon such a sale the single condition that a certificate shall be filed, and it is significant that, in other jurisdictions wherein the consent of the general partners to a transfer of the special partner's interest is required, the statutes have been careful to provide for such consent. Gen. St. Kan. 1905, c. 74, § 4778; 3 Purdon's Dig. Pa. (13th Ed.) § 32, p. 3465; English Limited Partnership Act, § 6, subdiv. 5b. Indeed throughout the whole act, from whatever standpoint it may be viewed, the special partner, so far as concerns his relations to his general partners, is treated as a mere contributor of capital with none of the rights or liabilities belonging to general partners, such as universal agency, unlimited liability for debts, and a property interest in the firm name and good will. The element of mutual trust and confidence, which is the keynote in the relation between general partners, is wholly and conspicuously lacking. In its absence we can find no foundation for the plea that the mere fact that a special partner in one firm becomes a special partner in a competing firm furnishes a sufficient ground for the dissolution of the first copartnership, for it involves no necessary inconsistency with the statutory or implied obligations resting upon a special partner. It might happen, of course, that a person who is special partner in two firms might be guilty of actual fraud or deceit towards one which would justify a dissolution. So might one who is a special partner in a single firm. But nothing of that sort is charged or proven here. The sole proposition upon which the judgment appealed from rests is that defendant's mere act in becoming a special partner in a competing firm was of itself an act of bad faith justifying a dissolution of plaintiffs' firm. To this proposition, for the reasons above stated, we cannot agree. Having arrived at this conclusion it is unnecessary to consider the minor objections urged against the judgment. As has been said the plaintiffs charge defendant with no act of bad faith except that he became a special partner with the firm of L. E. Remington & Co. It was conceded that defendant did not induce either Sinclair or Remington to leave the employ of Skolny & Co., and it was shown that he frankly communicated to plain-

tiffs, in advance, that he proposed to become a special partner in the firm of L. E. Remington & Co., and even stated the amount of his contributions and the extent of his expected interest.

The judgment appealed from must be reversed and a new trial ordered, with costs to defendant to abide event.

INGRAHAM, P. J., and McLAUGHLIN, J., concur. LAUGHLIN and DOWLING, JJ., dissent.

---

(66 Misc. Rep. 476.)

### PEOPLE v. MULLEN.

(Franklin County Court. March, 1910.)

1. CRIMINAL LAW (§ 253*)—JURISDICTION OF JUSTICES OF THE PEACE—ADJOURNMENT—APPLICATION TO TAKE CAUSE TO GRAND JURY.

   In cases which a justice of the peace has exclusive jurisdiction to try under Code Cr. Proc. § 57, relative to the exclusive jurisdiction by Courts of Special Sessions, the justice upon accused's demand must adjourn the case to give him an opportunity to apply to a county judge for a certificate to take the case to the grand jury.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 525; Dec. Dig. § 253.*]

2. CRIMINAL LAW (§ 226*)—PRELIMINARY EXAMINATION—JURISDICTION OF JUSTICES OF THE PEACE.

   A justice of the peace may grant a preliminary examination of a criminal charge, in cases only which a Court of Special Sessions cannot try, and in which the justice is obliged to discharge accused or send the case to the grand jury.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 473; Dec. Dig. § 226.*]

3. CRIMINAL LAW (§ 253*)—JURISDICTION OF JUSTICE OF THE PEACE—SECOND APPLICATION FOR CERTIFICATE TO GRAND JURY.

   Under the express provisions of Code Cr. Proc. § 56, subd. 2, a Court of Special Sessions has exclusive jurisdiction in the first instance to try an accused charged with assault in the third degree and where, after denial of accused's application to the county judge for a certificate that the case be sent to the grand jury, under section 57, providing that upon filing with the magistrate before whom is pending a charge for any of the crimes specified in the preceding section (relating to the exclusive jurisdiction of Courts of Special Sessions) a certificate of the county judge that it is reasonable that such charge be prosecuted by indictment, etc., the proceedings before the justice shall be stayed and a return made by him to the district attorney, accused appears before the justice and is granted a preliminary examination under sections 188 and 190, relating to preliminary examinations of accused, and, after taking the testimony, his motion to be discharged is denied, and he is held for the grand jury, he cannot again apply for a certificate that the case be sent to the grand jury upon the ground that the justice having heard the testimony is prejudiced and disqualified to try him since he is not obliged to be tried before the justice, but is entitled to a jury trial, and may appeal if any legal error is committed thereon.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 525; Dec. Dig. § 253.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes