[L.A. No. 30470. In Bank. Mar. 2, 1976.]

LEWIS W. EVANS, Plaintiff and Appellant, v.
JOHN N. GALARDI et al., Defendants;
EL DORADO IMPROVEMENT CO.,
Third Party Claimant and Respondent.

302

**COUNSEL**

Robert S. Sturges for Plaintiff and Appellant.

No appearance for Defendants.

Hodge & Hodges, Hodge, Hodges & Martin and John R. Skoog for Third Party Claimant and Respondent.

**OPINION**

**SULLIVAN, J.**—El Dorado Improvement Co. (El Dorado), a limited partnership, made and delivered pursuant to Code of Civil Procedure section 689[1] its verified third party claim to certain personal property upon which a writ of execution had been levied to enforce a judgment for money in favor of plaintiff Lewis W. Evans and against defendants John N. Galardi and Richard E. Hodge. After a hearing, the court sustained the claim and entered a judgment on third party claim declaring that at the time of levy of the writ the title to the property in

---

[1]Section 689 provides in relevant part: "If tangible or intangible personal property levied on, whether or not it be in the actual possession of the levying officer, is claimed by a third person as his property by a written claim verified by his oath or that of his agent, setting out the reasonable value thereof, his title and right to the possession thereof and delivered, together with a copy thereof, to the officer making the levy, such

question was vested in the third party claimant. Plaintiff appeals from the judgment.

The facts are not in dispute. El Dorado is a limited partnership formed for the purpose of owning and managing certain real property in the City of South Lake Tahoe, California, and of constructing, owning and managing a motel on the premises. Eventually, a motel known as the Rodeway Inn was built. When the partnership was formed in June 1969, plaintiff and defendants were the limited partners and entitled to receive all of the partnership net profits. The general partner at all times material herein was a California corporation known as El Dorado Improvement Corporation which operated the motel and whose stock initially was owned entirely by plaintiff and defendants. Raymond Haley was the president of the corporate general partner and in this position was charged with the over-all management of the business and with the supervision of its large number of employees.

About September 15, 1970, plaintiff, defendants and El Dorado Improvement Corporation entered into a written contract whereby plaintiff agreed to sell and defendants agreed to purchase for the sum of $50,000 all of plaintiff's right, title and interest in the limited partnership and all of plaintiff's stock in the corporate general partner. Defendants executed and delivered to plaintiff their promissory note for the full amount of the purchase price. The respective obligations were undertaken by the parties as individuals, and not in their status as limited partners or shareholders of the corporate general partner. El Dorado was not a party to the agreement of purchase and sale and did not sign either the agreement or the promissory note. As a result of this transaction, defendants as limited partners in El Dorado each became entitled to 50

---

officer must release the property and the levy unless the plaintiff, or the person in whose favor the writ runs, within five days after written demand by such officer, made by registered or certified mail within five days after being served with such verified claim, gives such officer an undertaking executed by at least two good and sufficient sureties, in a sum equal to double the value of the property levied upon.

"Whenever a verified third party claim is delivered to the officer as herein provided, upon levy of execution or attachment (whether any undertaking hereinabove mentioned be given or not), the plaintiff, or the person in whose favor the writ runs, the third party claimant, or any one or more joint third party claimants, shall be entitled to a hearing in the court in which the action is pending or from which the writ issued for the purpose of determining title to the property in question. . . . At the conclusion of the hearing the court shall give judgment determining the title to the property in question, which shall be conclusive as to the right of the plaintiff, or other person in whose favor the writ runs, to have said property levied upon, taken, or held, by the officer and to subject said property to payment or other satisfaction of his judgment. In such judgment the court may make all proper orders for the disposition of such property or the proceeds thereof."

percent of its net profits, if any, and became the owners of all of the stock of the corporate general partner.

Defendants defaulted on the promissory note and about April 2, 1971, plaintiff brought an action against them in their individual capacity to recover on it. Ultimately judgment was entered in favor of plaintiff and against defendants individually in the sum of $60,008.15.[2]

On May 9, 1973, plaintiff obtained a writ of execution for the full amount of the judgment,[3] and instructed the Sheriff of El Dorado County to levy execution upon the Rodeway Inn and to place a keeper there to collect the receipts of the business until the judgment was satisfied.

El Dorado filed a third party claim (see fn. 1, *ante*) to the property and business receipts alleging that it was the sole owner of the Rodeway Inn and its receipts and that defendants had no interest in the property upon which a writ of execution could properly be levied to enforce plaintiff's judgment. It further alleged that plaintiff could have reached defendants' partnership interests to satisfy his judgment only by means of a charging order, which had not been utilized in the instant case. As previously stated, the claim was sustained.

Plaintiff does not dispute that the legal title to the Rodeway Inn and to the money receipts generated by the motel is vested in El Dorado. Rather, he asserts that since defendants in their capacities as limited partners are each entitled to one-half of the net profits, they together in fact own the entire equitable and beneficial interest in El Dorado's assets.[4] On this basis, he contends: First, that he should be permitted to reach the partnership assets in satisfaction of his judgment against these defendants as individuals; and second that El Dorado is not a bona fide third party and hence may not assert a claim under Code of Civil Procedure section 689.

We begin our analysis by observing that as a general rule "[a]ll goods, chattels, moneys or other property, both real and personal, or any

---

[2]The judgment was thereafter modified and affirmed on appeal,and has become final.

[3]Plaintiff concedes that he had received a payment of $18,000 in partial satisfaction of the judgment and hence that the writ of execution was improperly issued with respect to this amount.

[4]Plaintiff points out that the corporate general partner has no equity ownership in El Dorado, and in any event, its stock is owned entirely and equally by the two judgment debtors.

interest therein, of the judgment debtor, not exempt by law . . . are liable to execution." (Code Civ. Proc., § 688.) Thus, the initial and most important question confronting us is whether defendants, in their capacities as limited partners, have any interest in the assets of El Dorado as such which renders these assets potentially subject to execution in satisfaction of a personal judgment against defendants. In answering this question, we find it helpful to discuss briefly some of the basic principles underlying the law governing limited partnerships.

■ The form of business association known as a "limited partnership" was not recognized at common law and is strictly a creature of statute. (2 Rowley on Partnership (2d ed. 1960) Limited Partnerships, § 53.0, pp. 549-550; 2 Barrett & Seago, Partners and Partnerships, Law and Taxation (1956) Limited Partnerships, § 1, p. 483; *Alley* v. *Clark* (E.D.N.Y. 1947) 71 F.Supp. 521, 524; *Skolny* v. *Richter* (1910) 139 App.Div. 534 [124 N.Y.S. 152, 154].)[5] It can generally be described as a type of partnership comprised of one or more general partners who manage the business and who are personally liable for partnership debts, and one or more limited partners who contribute capital and share in the profits, but who take no part in running the business and incur no liability with respect to partnership obligations beyond their capital contribution. (Corp. Code, § 15501[6]; 2 Barrett & Seago, Partners and

---

[5]The origin, history and purpose of this type of business organization was described by the New York court in *Ames* v. *Downing* (1850) 1 Bradf. 321, 329-330: "The system of limited partnerships, which was introduced by statute into this State, and subsequently very generally adopted in many other States of the Union, was borrowed from the French Code. (3 *Kent*, 36; *Code de Commerce*, 19, 23, 24.) Under the name of *la Societe en commandite*, it has existed in France from the time of the middle ages; mention being made of it in the most ancient commercial records, and in the early mercantile regulations of Marseilles and Montpelier. In the vulgar Latinity of the middle ages it was styled *commenda,* and in Italy *accomenda.* In the statutes of Pisa and Florence, it is recognized so far back as the year 1160; also in the ordinance of Louis-le-Hutin, of 1315; the statutes of Marseilles, 1253; of Geneva, of 1588. In the middle ages it was one of the most frequent combinations of trade, and was the basis of the active and widely-extended commerce of the opulent maritime cities of Italy. It contributed largely to the support of the great and prosperous trade carried on along the shores of the Mediterranean, was known in Languedoc, Provence, and Lombardy, entered into most of the industrial occupations and pursuits of the age, and even travelled under the protection of the arms of the Crusaders to the city of Jerusalem. At a period when capital was in the hands of nobles and clergy, who, from pride of caste, or canonical regulations, could not engage directly in trade, it afforded the means of secretly embarking in commercial enterprises, and reaping the profits of such lucrative pursuits, without personal risk; and thus the vast wealth, which otherwise would have lain dormant in the coffers of the rich, became the foundation, by means of this ingenious idea, of that great commerce which made princes of the merchants, elevated the trading classes, and brought the Commons into position as an influential estate in the Commonwealth."

[6]Hereafter, unless otherwise indicated, all section references are to the Corporations Code.

Partnerships, Law and Taxation, *supra,* Limited Partnerships, § 1, p. 482; 2 Rowley on Partnership, *supra,* Limited Partnerships, § 53.0, p. 549.) The obvious purpose underlying legislative recognition of this type of business entity was to encourage trade by permitting "a person possessing capital to invest in business and to reap a share of the profits of the business, without becoming liable generally for the debts of the firm, or risking in the venture more than the capital contributed, provided he does not hold himself out as a general partner, or participate actively in the conduct of the business." (*Skolny* v. *Richter, supra,* 124 N.Y.S. 152, 155; see also *Clapp* v. *Lacey* (1868) 35 Conn. 463, 466.)

The California Legislature first legitimated limited partnerships in this state in 1870 by enacting a "special partnership" statute (Stats. 1869-1870, ch. 129, p. 123). These provisions were subsequently repealed in 1929, when the Legislature adopted the Uniform Limited Partnership Act.[7] Among other things, this act sets forth with considerable specificity the rights and obligations of the general and the limited partners, including a detailed description of their proprietary interests in the business. With certain specified limitations, the general partner has all of the rights and powers enjoyed by partners in "non-limited" partnerships. (§ 15509.) Thus, by reference to the Uniform Partnership Act (§ 15001 et seq.), his property rights include: "(1) *his rights in specific partnership property,* (2) his interest in the partnership, and (3) his right to participate in the management." (§ 15024, italics added.)[8] In sharp contrast, the limited partner is given no property interest in the specific partnership

---

[7]See Statutes 1929, chapter 865, pages 1912, 1913. This act was subsequently reenacted into sections 15501-15531 (Stats. 1949, ch. 383, pp. 674, 688). As of 1974, the act had been adopted in 48 states as well as in the District of Columbia and the Virgin Islands.

[8]Section 15025 defines the nature of and the limitations upon a partner's interest in specific partnership property:

"(1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

"(2) The incidents of this tenancy are such that:

"(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

"(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property.

"(c) A partner's right in specific partnership property is not subject to attachment, or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws.

"(d) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or

assets as such. Rather, he is entitled, among other things,[9] "to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in Sections 15515 and 15516." (§ 15510, subd. (2).)[10]

This unwillingness on the part of the Legislature to grant the limited partner a property interest in the specific assets owned by the partnership, while at the same time providing for such an interest in the general partner, compels the conclusion that the limited partner has no interest in the partnership property by virtue of his status as a limited partner. Thus, such assets are not available to satisfy a judgment against the limited partner in his individual capacity. (Code Civ. Proc., § 688.)

While our research has disclosed no reported California decision which has considered this question, we note that our conclusion in this regard finds ample support in the decisions of our sister states and of the federal courts as well as in various treatises and other legal authorities. (See, e.g., *Reiter* v. *Greenberg* (1968) 21 N.Y.2d 388 [288 N.Y.S.2d 57, 60, 235 N.E.2d 118]; *In re Panitz & Co.* (D.Md. 1967) 270 F.Supp. 448, 453, affirmed *sub nom. Hammerman* v. *Arlington Federal Sav. & Loan Assoc.,*

---

partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

"(e) A partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin, and is not community property."

The general partner's interest in specific partnership property is in addition to his interest in his share of the profits and surplus. (§ 15026.)

[9] The limited partner is also given "the same rights as a general partner to

"(a) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them.

"(b) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable, and

"(c) Have dissolution and winding up by decree of court." (§ 15510, subd. (1).)

[10] Section 15515 states: "A limited partner may receive from the partnership the share of the profits or the compensation by way of income stipulated for in the certificate; provided, that after such payment is made, whether from the property of the partnership or that of a general partner, the partnership assets are in excess of all liabilities of the partnership except liabilities to limited partners on account of their contributions and to general partners."

Section 15516 defines and circumscribes the limited partner's right to withdraw his contribution and to dissolve the partnership.

Section 15502 provides that the certificate which must be filed to form a limited partnership must specify "[t]he share of the profits or the other compensation by way of income which each limited partner shall receive by reason of his contribution." In the instant case, the partnership agreement in effect at the time of these proceedings apparently gave each defendant the right to 50 percent of the net partnership profits.

Section 15518 states that "[a] limited partner's interest in the partnership is personal property."

385 F.2d 835; *Alley* v. *Clark, supra,* 71 F.Supp. 521, 526-527; *Sanderson* v. *Cooke* (1931) 256 N.Y. 73 [175 N.E. 518, 521-522]; *Appeal of Silberman* (1926) 105 Conn. 192 [134 A. 778, 785], reversed in part on other grounds *sub nom. Blodgett* v. *Silberman* (1927) 277 U.S. 1 [72 L.Ed. 749, 48 S.Ct. 410]; *Harris* v. *Murray* (1864) 28 N.Y. 574 [86 Am.Dec. 268, 269, 270]; 2 Barrett & Seago, Partners and Partnerships, Law and Taxation, *supra,* Limited Partnerships, § 1, p. 485; 2 Rowley on Partnership, *supra,* Limited Partnerships, §§ 53.18, 53.26, pp. 582, 594; Comment, *The Limited Partnership* (1954) 2 U.C.L.A.L.Rev. 105, 118-119.)

Thus, in a case substantially identical to the one at bench, the New York Court of Appeal held that a sheriff lacked the power and jurisdiction to sell property owned by a limited partnership in execution of a judgment against a limited partner. In so holding, the court reasoned: "The interest of Harris [the limited partner] in the property of a limited partnership can hardly be said to be an interest in the property of the firm. He advanced to the firm a sum of money, which he is entitled to receive back, with interest, at the termination of the partnership; he is also entitled to a share in the profits; but he is to no further extent the owner of the property. Upon payment of these claims, the property would belong to the general partners." (*Harris* v. *Murray, supra,* 28 N.Y. 574 [86 Am. Dec. 268, 270].)[11]

Quite apart from the lucid statutory language and the overwhelming weight of authority, the very nature of the limited partner's relationship with the business organization indicates that he has no property interest in the specific partnership assets which would render them available to his personal creditors. The limited partner is, primarily, an investor, who contributes capital and thereby acquires the right to share in the business

---

[11]Courts have similarly concluded that a limited partner has no right, title or interest in specific partnership property which would enable him to maintain an action to recover such property under the Trading with the Enemy Act (*Alley* v. *Clark, supra,* 71 F.Supp. 521, 526-527), which would permit a court to assume jurisdiction over such property when a limited partner undergoes bankruptcy (*In re Panitz & Co., supra,* 270 F.Supp. 448, 453) or which would subject a person selling limited partnership interests in a company formed to purchase, operate and manage real property to statutes governing real estate brokers (*Reiter* v. *Greenberg, supra,* 288 N.Y.S.2d 57, 60-61).

We are aware that the decision of the Ninth Circuit Court of Appeals in *Donroy, Ltd.* v. *United States* (9th Cir. 1962) 301 F.2d 200, contains language supportive of a contrary position. In holding that a Canadian corporation, which was a limited partner in a California limited partnership, had a "permanent establishment" in the United States for purposes of a tax convention with Canada, the court stated that "each partner, whether general or limited has an· interest as such in the assets and profits of the partnership, including the physical plant or offices at which the partnership conducts its business . . . ." (*Id.,* at p. 207.) However, the court's finding of such an interest for purposes of a tax convention is not persuasive authority in regard to the question at bar.

profits. (See Uniform Limited Partnership Act, Official Comment, § 1.) His contribution must be in the form of cash or other property, may not consist of services (§ 15504), and must be specified as to amount in the partnership certificate. (§ 15502.) His surname may not be used as part of the firm name. (§ 15505.) He may not actively participate in the conduct of the business. (§ 15507.) Assuming that he complies with these conditions, he is not liable as a general partner on business debts and obligations, except to the extent of his capital contribution. (§§ 15501, 15507.) His death or withdrawal will not dissolve the partnership (§§ 15519, 15520, 15521), and he is not a proper party to proceedings by or against the firm. (§ 15526.) In sum, "[t]he most striking feature of the relation of a special partner to the copartnership is its detached and impersonal character which accentuates sharply its dissimilarity from the relations of a general partner." (*Skolny* v. *Richter, supra,* 124 N.Y.S. at p. 155.)

In the instant case, it is undisputed that plaintiff's action on the promissory note and the ensuing judgment were against defendants as individuals, and that El Dorado was not named as a party to the action or as a judgment debtor. Furthermore, there is no question but that the cash receipts of the Rodeway Inn constitute an asset owned by El Dorado. Therefore, under the principles heretofore discussed, defendants in their capacities as limited partners had no property interest in these receipts; accordingly, the receipts were improperly levied upon in execution of plaintiff's judgment against defendants. (Code Civ. Proc., § 688.)[12]

We are not persuaded by plaintiff's argument that a contrary conclusion is compelled simply because defendants were entitled to 100 percent of the net partnership profits in their capacity as limited partners. The Uniform Limited Partnership Act does not distinguish between the rights and obligations of limited partners or their relationship with the firm depending upon the extent of their ownership interest. Nor does plaintiff suggest any grounds for ignoring the result mandated by the act in the instant case.

---

[12]It is possible that a portion of these cash receipts may, eventually, constitute "net profits" of El Dorado to which defendants will be entitled as limited partners. However, there is absolutely no evidence in the record as to the financial status of El Dorado which indicates what, if any, part of the receipts may find their way into defendant's hands in the form of distributed net profits. Furthermore, plaintiff did not purport to limit the scope of execution accordingly. Finally, section 15522 indicates that plaintiff must obtain a charging order, rather than a writ of execution, to reach defendants' interests in the limited partnership. (See discussion in text accompanying fn. 14, *infra.*)

Plaintiff does not claim and certainly did not establish at the hearing before the trial court, that there is any basis for finding that El Dorado is not, in fact, a bona fide limited partnership or that defendants' relationship with the firm indicates that they should be treated as general partners.[13] Nor does he allege that defendants used this form of business to defraud plaintiff or anyone else or that they treated the business assets as their own. (See, e.g., *Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 579 [15 Cal.Rptr. 641, 364 P.2d 473].) In short, plaintiff provides no legal basis for the rule he would have us adopt and accordingly we reject it.

■ We wish to point out that our decision in this regard does not leave plaintiff remediless. Section 15522, subdivision (1), establishes a method by which a creditor of a limited partner may satisfy his claim from the debtor's partnership interest through the use of a so-called charging order.[14] In construing a virtually identical statute applicable to "non-limited" partnerships (§ 15028, subd. (1)), this court stated that "charging orders on partnership interests have replaced levies of execution as the remedy for reaching such interests." (*Baum* v. *Baum* (1959) 51 Cal.2d 610, 612-613 [335 P.2d 481].)

Plaintiff would have us adopt an exception to this statutory prohibition against execution (§§ 15028, 15522) to cover those cases in which the partnership is owned entirely by the judgment debtors.[15] He argues that

---

[13]We note that even if plaintiff were able to show that defendants should be viewed and treated as general partners, he could not reach the partnership assets by reason of this fact alone. Section 15025, subdivision (2)(c) provides that "[a] partner's right in specific partnership property is not subject to attachment, or execution, except on a claim against the partnership." Section 15509 makes the same rule applicable to general partners in a limited partnership.

[14]Section 15522 provides in relevant part as follows: "On due application to a court of competent jurisdiction by any creditor of a limited partner, the court may charge the interest of the indebted limited partner with payment of the unsatisfied amount of such claim; and may appoint a receiver, and make all other orders, directions, and inquiries which the circumstances of the case may require."

[15]In urging that we recognize this exception plaintiff relies upon the case of *Taylor* v. *S & M Lamp Co.* (1961) 190 Cal.App.2d 700 [12 Cal.Rptr. 323]. However, the specific holding of that case indicates that plaintiff's reliance thereon is misplaced. We quote the relevant portion of that opinion: " 'Charging orders on partnership interests have replaced levies of execution as the remedy for reaching such interests.'

"This is a correct statement of the law as applied to the ordinary case, i.e., (1) where the partnership continues a bona fide existence and (2) where there is no transfer of partnership assets without a fair and adequate consideration or in fraud of creditors of either the partnership or of individual partners. But, if as alleged, (a) dissolution occurred (see Corp. Code, §§ 15029 and 15031 as to definition and causes of dissolution), or (b) there was a transfer of partnership assets to one or more of the remaining partners, or to a third party, without a fair and adequate consideration or for the purpose of defrauding creditors of the partnership or of individual partners, then we do not have the ordinary and usual situation which Corporations Code, sections 15025 and 15028, are

the purpose underlying the enactment of these statutes is to protect innocent partners from the injustice and hardship they may suffer when partnership property is sold in execution of a judgment against an individual partner. (*Taylor* v. *S & M Lamp Co., supra,* 190 Cal.App.2d 700, 708.) This purpose, so the argument goes, is not furthered by disallowing execution against specific partnership assets in cases when the judgment debtors own the entire proprietary interest in the business.

We decline plaintiff's invitation to recognize such an implied exception to the required use of the statutory charge procedure. Where, as in the instant case, the partnership is a viable business organization and plaintiff does not show that he will be unable to secure satisfaction of his judgment by use of a charging order or by levy of execution against the debtors' other personally owned property, there is no reason to permit deviation from the prescribed statutory process.

Finally, plaintiff argues that since El Dorado was owned entirely by defendants, it was not a bona fide third party claimant for purposes of Code of Civil Procedure section 689 and therefore could not properly assert a third party claim under this statute. In making this argument, plaintiff relies upon various authorities which state that a partnership is not necessarily viewed as a separate legal entity for all purposes. (See, e.g., 1 Barrett & Seago, Partners and Partnerships, Law and Taxation, *supra,* Characteristics of a Partnership, § 1.2, pp. 151-156; 1 Rowley on Partnership, *supra,* Historical and Preliminary, § 1.3, pp. 22-23.)

In answering plaintiff's contention, we need only point out that a limited partnership is viewed as an entity separate and apart from the limited partners for purposes of suing and being sued. (Code Civ. Proc., § 388, subd. (a); § 15526.)[16] The limited partner is not a proper party to proceedings by or against the limited partnership (§ 15526), and the limited partnership is not involved in suits against the limited partners in their individual capacity. (2 Rowley on Partnership, *supra,* Limited Partnerships, § 53.26, p. 594.)

---

designed to protect. To apply the general rule as a shield to such a situation is contrary to reason and would violate public policy." (*Id.,* at pp. 710-711.)

[16]Code of Civil Procedure section 388 provides in relevant part that "[a]ny partnership or other unincorporated association, whether organized for profit or not, may sue and be sued in the name which it has assumed or by which it is known." While a general partner may be joined as a party to proceedings by or against the firm, the limited partner may not. (Code Civ. Proc., § 388, subd. (b); § 15526; see also Uniform Limited Partnership Act, § 26; *Riviera Congress Associates* v. *Yassky* (1966) 18 N.Y.2d 540 [277 N.Y.S.2d 386, 391, 223 N.E.2d 876]; 2 Rowley on Partnership, *supra,* Limited Partnerships, § 53.26, p. 594; 68 C.J.S., Partnership, § 486, subd. (a), pp. 1037-1038.)

In the instant case, El Dorado was not named or in any way involved in plaintiff's suit against defendants. Nor did the judgment entered in the action purport to hold the limited partnership liable. Rather, the suit was based upon plaintiff's personal claim against defendants as individuals and the judgment was rendered accordingly. Thus, El Dorado may be viewed as an entity separate and apart from the limited partners for purposes of this action.

Furthermore, we have previously determined that defendants had no interest in the property seized in execution of plaintiff's judgment, and that El Dorado was the legal owner of this property. Under these circumstances, El Dorado could properly assert its right to these assets by filing a third party claim under Code of Civil Procedure section 689.[17]

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.

---

[17]It is noteworthy that plaintiff states in his brief on appeal that "[t]he purpose of the third party claim procedure is to ascertain whether the debtor has any right, title, or interest in the property levied upon." This is exactly the purpose served by the proceedings in the instant case.