No. 16,583.

RESERVE LIFE INSURANCE COMPANY, DALLAS, TEXAS *v.*
FRANKFATHER.
(225 P. [2d] 1035)

Decided November 27, 1950.

Messrs. WOLVINGTON & WORMWOOD, Mr. FORREST C.
O'DELL, for plaintiff in error.

Messrs. CREAMER & CREAMER, Mr. CHARLES GINSBERG,
for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

CLAY B. FRANKFATHER brought an action against Reserve Life Insurance Company, Dallas, Texas, a corporation, and recovered judgment. The insurance company sought a review here by writ of error.

Subsequent to docketing the case here on error, counsel for Frankfather filed a motion to dismiss the writ of error upon the alleged ground that the action was moot, and in support of the motion alleged the following uncontraverted facts:

On November 30, 1949, judgment was entered in favor of Frankfather and against the insurance company, at which time a stay of execution was granted for a period of thirty days, and sixty days were allowed to prepare and tender a reporter's transcript; December 27, 1949, the insurance company's motion for a further stay of execution for thirty days, and an additional thirty days for tendering the reporter's transcript was granted; February 16, 1950, the reporter's transcript was lodged, and no further stay of execution having been requested or granted, on April 10, 1950, execution was issued, and garnishee summons served upon a bank in which the insurance company had moneys on deposit; April 12, 1950, the insurance company moved for stay of execution nunc pro tunc, which motion was denied; April 13, 1950, the insurance company paid the judgment, together with interest and costs, and on the same day Frankfather's attorneys satisfied the judgment in full. Accordingly it is contended by Frankfather's counsel that, "there are now and presently no issues extant and in existence between plaintiff in error and defendant in error, and all questions sought to be raised by the Writ of Error herein are mooted."

The only question presented by the motion is whether the factual situation here presented deprives the judg-

ment debtor of his right to have the judgment of the trial court reviewed by writ of error here, and the answer depends solely upon whether, in consideration of the factual situation presented, the questions are, as Frankfather contends, moot.

In *Bray v. Trower,* 87 Colo. 240, 286 Pac. 275, we said: "The following is a general definition of a moot case, sufficient for all purposes here: 'Any attempt, by a mere colorable dispute, to obtain the opinion of a court upon a question of law, when there is no real controversy * * *.' Bouvier's Law Dictionary (Rawles 3d Rev.), page 2245. There has been no such attempt on the part of defendant Bray. Plaintiff cannot tie up defendant with a permanent writ of injunction, and then declare the case to be moot because the party enjoined does not defy the order of court. Defendant could not do otherwise than obey the order, and he is entitled to a review in this court, to determine whether or not the injunction was improvidently issued."

There is no moot case or moot question where there are substantial rights or issues controverted in the case, and it is the duty of this court to review on writ of error any judgment of a trial court where substantial rights or issues are involved, provided the defeated party seeks timely relief thereby. If, however, there is nothing to be determined except an abstract question which is divorced from existing facts or rights or rests upon a pretended controversy, when in fact there is really none, or where a judgment which, when rendered, cannot have any effect upon an existing controversy, then the question is moot; otherwise the question does not become moot, and this court is under a duty to determine issues when properly presented.

Frankfather, in support of his motion to dismiss, directs our attention to the following decisions in this jurisdiction: *Atkinson v. Tabor,* 7 Colo. 195, 3 Pac. 64; *Floyd v. Cochran,* 24 Colo. 489, 52 Pac. 676; *Knowles v. Harrington,* 45 Colo. 346, 101 Pac. 403; *Denver v. Brown,*

47 Colo. 513, 108 Pac. 971; *Hawthorne v. Hendrie & Bolthoff Mfg. & Sup. Co.*, 50 Colo. 342, 116 Pac. 122; *Bull v. Doss Brothers*, 51 Colo. 459, 119 Pac. 156; *Nichols v. Katres*, 57 Colo. 471, 140 Pac. 792; *True v. True*, 69 Colo. 502, 194 Pac. 1063; *Walker v. Walker*, 85 Colo. 473, 276 Pac. 981; *Lehrman Merc. Co. v. Ireland*, 93 Colo. 209, 24 P. (2d) 750; *Coe v. Waters*, 16 Colo. App. 311, 64 Pac. 1054; *People ex rel. v. Cannon*, 26 Colo. App. 500, 145 Pac. 711.

We have studied all of these decisions, and in some of them the records and briefs in connection therewith. A detailed analysis of each would unduly prolong this opinion; however we shall discuss each case briefly.

In *Atkinson v. Tabor*, is the statement: "We entertain no doubt of the general proposition, that it is inconsistent with the principles of justice, and the rules of law, to permit a party, who has *voluntarily taken advantage of a judgment* rendered at *nisi prius*, to afterwards prosecute proceedings to reverse it." (Italics ours) That decision would preclude Frankfather, but has no application to the insurance company in the present case.

In *Floyd v. Cochran*, it was held that the matters in controversy had been definitely and finally settled in another action and that there were no questions left to be determined; consequently the writ of error was dismissed. In connection therewith we quoted with approval the following from *Mills v. Green*, 159 U. S. 651, "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."

*Knowles v. Harrington*, was dismissed on the court's own motion when, upon oral argument, it was disclosed that the judgment against plaintiff in error had been satisfied in full. Our court there held that there was no judgment before it for review and stated: "Courts

are organized for the purpose of determining *live questions* between parties who are interested or affected by such determination." (Italics ours) In support of that position *Hunter v. Dickinson,* 3 Colo. App. 372, was cited, wherein it is said: "It is not permitted to litigants to commence actions, take appeals, *settle their controversies* and then call upon the court to declare general principles, \* \* \*, and determine rights which can only be of value to perhaps other pending or future litigation." (Italics ours)

In *Knowles v. Harrington,* there is nothing to indicate that the settlement of the controversy involved was other than purely voluntary.

In *Denver v. Brown,* plaintiff in error was ordered to furnish irrigation water for the season of 1905 at the rate of $1.25 per inch, and there was a full compliance with the order of court by Denver. The parties had stipulated that there should be deposited with the court the sum of $2.00 per inch for the irrigation water in 1905 with the understanding that $1.25 might be withdrawn by the city, the remaining seventy five cents to await the determination of the cause by the courts. If the judgment of the trial court was affirmed, the remaining seventy-five cents should be refunded to those who made the deposit. The city complied with the court's order in furnishing irrigation water in 1905, and the opinion of the court was announced in January, 1910. The writ of error was dismissed because, it was held, the subject matter of the controversy had ceased to exist, the court stating: "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and it is not within the province of an appellate court to decide abstract or hypothetical questions disconnected from the granting of actual relief, or from the determination of which no practical result can follow. [citing cases]."

In *Hawthorne v. Hendrie & Bolthoff Mfg. & Sup. Co.,* a judgment debtor became bankrupt, and Hawthorne was appointed its trustee. The judgment of the Hendrie

& Bolthoff Co. was filed and allowed as a claim against the bankrupt estate, and Hawthorne *ordered* to pay the same, with which order he complied, making two payments. Upon delivery of the final payment, Hawthorne demanded a receipt, which recited, "In payment of the balance due on account of our [Hendrie's] mechanic's lien claim filed and allowed, * * * it being understood that, in event this payment is found, on final distribution of the mill fund now on hand, to be excessive, or otherwise improper for any reason, then the same, or such part thereof as may be required by the referee, will be returned to the trustee." The trustee filed his report showing the payment of the Hendrie & Bolthoff claim in full, and the report was approved. Hawthorne sought a review of the Hendrie & Bolthoff judgment against the bankrupt mining company. On motion to dismiss the writ of error, we held that the payment was *voluntary and not under duress,* and, therefore, the writ was dismissed.

In *Bull v. Doss Brothers Co.,* it was alleged in the motion granted by the court that the judgment had been *voluntarily* paid and satisfied. It was there contended that the payment of the judgment was under duress and compulsion. This court determined otherwise and held that under the factual situation presented there was *no duress* impliedly finding that if the factual situation presented either duress or compulsion the writ would not have been dismissed.

In *Nichols v. Katres,* the successful plaintiff filed a complete release and satisfaction of the judgment upon payment to him of a lesser sum in compromise, and stipulated that the judgment in his favor should be fully satisfied and the lien thereof released. There was no question as to the legality of the settlement and release so far as it affected the parties litigant, but attorneys representing the successful plaintiff objected to the dismissal because there was no provision for the payment in full of his attorneys. Under the factual situation there

existing, there was no actual controversy involving substantial, or any, rights of the litigants, and, therefore, any questions presented were moot. Under those circumstances the writ was dismissed.

In the Lehrman Mercantile Company case the controversy arose over the ownership of a check representing the proceeds from the sale of a beet crop. The Lehrman Company claimed it was entitled to the entire amount while Ireland claimed a portion thereof, and this gave rise to an action by the latter against the Lehrman company. The judgment was in favor of Ireland, and the court ordered the fund deposited into the registry fund, and that Ireland was to receive a designated portion thereof, the balance to be paid to the Lehrman company. Subsequently, the Lehrman company's attorney wrote Ireland, asking his consent for the distribution of the funds in accordance with the judgment of the court *without prejudicing* the Lehrman company's right to have the entire judgment reviewed by this court, and consent by Ireland was withheld. Thereafter the Lehrman company withdrew the funds and made distribution in strict accordance with the trial court's judgment, and ten months later sued out a writ of error. It was contended by Ireland in a motion to dismiss that the payment to him was *voluntarily* made by the Lehrman company, and, therefore, the question was moot. The court, by granting the motion to dismiss, so held.

*True v. True* and *Walker v. Walker,* are divorce cases in which orders for temporary alimony were made, and these orders fully obeyed. Nothing in either of these opinions is enlightening upon the question now under consideration.

In *Coe v. Waters,* Waters recovered a judgment against Coe in a suit upon an appeal bond. Subsequent to July, 1898, the judgment was entered; the transcript was filed in September, 1898. Thereafter and in June, 1900, Coe filed a petition in bankruptcy, and his discharge in bankruptcy was entered in November, 1900. In December,

1900, Coe moved for a dismissal of the action pending on review, and this motion was granted. In connection with the granting of the motion it was said: "As the debt, or claim, of appellee [Waters] based upon the appeal bond sued on herein was a provable debt in the bankruptcy proceeding and discharged thereby, as the costs incurred by the appellee [Waters] in the court below and in this court in an action in good faith upon said provable claim, begun before the filing of the petition, were also provable in said bankruptcy proceeding and discharged thereby, nothing further remains to litigate herein, therefore, it is ordered that this cause be dismissed, each party paying his own costs."

In *The People v. Cannon* case, upon motion to dismiss a writ of error, it appeared that the stay of execution had expired, no application for supersedeas was made, and that plaintiff in error, long after the stay of execution had expired, paid the indebtedness. There was no live issue for adjudication, and, therefore, the writ was dismissed. From the record it is reasonable to suppose that there was no resistance to the granting of the motion, and, in fact, that appellant had abandoned and discontinued his suit.

In the instant case it should be remembered that through oversight or inadvertence the stay of execution granted by the trial court had expired, and, under the circumstances, the motion for a nunc pro tunc was denied. Whereupon Frankfather, with his execution outstanding, fortified by garnishee summons, was able to secure the payment of his judgment in full and simultaneously therewith he satisfied the judgment docket. It is now Frankfather's position that the question of the legal liability of the insurance company on its policy to him is moot. While it is true Frankfather is entirely satisfied, with his claim paid in full, nevertheless the insurance company insists that there was no valid claim against it justifying any payment or judgment in Frankfather's behalf, and that is the question which it desires

to have presented here and determined by us. The insurance company's claim presents a substantial question, rather than an abstract question of law.

"The general rule is that one against whom a judgment or decree for a sum of money has been rendered does not, *by voluntarily paying or satisfying it,* waive or lose his right to review it upon a writ of error or appeal *unless such payment or satisfaction was by way of compromise or with an agreement not to pursue an appeal or error proceeding.* The basis of this rule is that one against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against seeking to avoid it for error. The better view, accordingly, is that though the execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors or depriving the payer of the right to appeal. Certainly the fact that the satisfaction of the judgment is *coerced by execution or other process,* such satisfaction being in invitum, does not operate as a waiver of the right to an appeal or writ of error. * * *

"It has been broadly stated by some courts, however, that one who voluntarily performs or satisfies a judgment, order, or decree against him waives his right to have the same reviewed on appeal or error proceedings. * * *." (Italics ours) 2 Am. Jur., p. 981, §221.

"Whether payment or performance of a judgment order, or decree is voluntary or involuntary depends upon the circumstances. Payment, performance, or satisfaction of a judgment, order, or decree on execution or to avoid its compulsory enforcement by pending or threatened execution, contempt proceedings, or otherwise, is regarded as coerced, and not voluntary within the rule that a voluntary payment, performance, or satisfaction bars an appeal or proceeding in error for reversal; * * *." 4 C.J.S., p. 412, §214.

"It is obvious that there is an essential difference between one who pays a judgment against him and one who accepts payment of a sum awarded him by a judgment. Payment by a party against whom a judgment is rendered may often be necessary to protect his property from sacrifice, and what a party does to prevent the sacrifice of his property can not with any tinge of justice, be held to preclude him from assailing the judgment. Our cases holding that payment by the defendant does not estop him from prosecuting an appeal rest on solid ground and are sustained by the decisions of other courts. The principle that a party may protect his property from sacrifice by a forced sale upon an execution sustains the decision that a defendant does not preclude himself from prosecuting an appeal by securing an entry of replevin bail. If the defendant should agree not to prosecute the appeal and in consideration of such an agreement the creditor should abate part of the recovery, extend the time of payment, or do some other act of a similar character, then, the right of appeal would be waived since the controversy would be terminated." Elliott, Appellate Procedure, p. 128, §152.

"One against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against him seeking to avoid it for error. Nevertheless there are cases deciding that one paying a judgment against him precludes all appeal therefrom. The better view, we think, is, that though execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of his right to appeal, unless payment be by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination. There may be circumstances, though, in which a defendant by paying part of a judgment to gain a special advantage may estop

himself from prosecuting an appeal." 2 Freeman on Judgments, p. 2410, §1165.

In *Erwin v. Lowry,* 7 Howard 172, decided by the United States Supreme Court in 1849, and consistently followed by the federal courts thereafter, it is said: "Five years is the time allowed for prosecuting appeals to and writs of error out of this court, and in many cases decrees and judgments are executed before any step is taken to bring the case here; yet in no instance within our knowledge has an appeal or writ of error been dismissed on the assumption that a release of errors was implied from the fact that money or property has changed hands by force of the judgment or decree. *If the judgment is reversed, it is the duty of the inferior court, on the cause being remanded, to restore the parties to their rights.*" (Italics ours)

The following are some of the numerous decisions in jurisdictions other than ours which hold that obedience to a mandate of court is not voluntary in the sense that it constitutes a waiver of error or estoppel, thereby making the questions arising in the trial court moot so as to prevent a review thereof: *Beronio v. Pension Commission of City of Hoboken,* 130 N.J.L. 620, 33 A. (2d) 855; *In the Matter of Creager,* 323 Ill. App. 594, 56 N.E. (2d) 649; *Josevig-Kennecott Copper Co. v. James F. Howarth Co.,* 261 Fed. 567; *McConnell v. Thomson,* 213 Ind. 16, 8 N.E. (2d) 986; 113 A.L.R. 430; *O'Hara v. MacConnell,* 93 U. S. 150; *Yellowstone Sheep Co. v. Ellis,* 55 Wyo. 63, 96 P. (2d) 895; *Hallett v. Slaughter,* 22 Cal. (2d) 552, 140 P. (2d) 3; *James v. Amrine,* 157 Kan. 397, 140 P. (2d) 362; *Webb v. Crane Co.,* 52 Ariz. 299, 80 P. (2d) 698.

█ We conclude from a study of our own decisions, and in many instances the records and motions filed therein, and numerous decisions in other jurisdictions, that where a judgment debtor, in obedience to the order of court or under compulsion of an execution, satisfies the judgment rendered against him, he does not thereby

88

waive his right to have the judgment reviewed on writ of error by this court. In event the judgment is reversed, the judgment debtor is entitled to complete restoration of his property or rights in accordance with the mandate of this court.

The factual situation here considered, we are of the opinion that the payment of the judgment here questioned was not such a voluntary payment as will estop the insurance company from prosecuting its writ of error, and, accordingly, the motion to dismiss is denied.

The request of Frankfather's counsel for oral argument and his motion to dismiss are both denied.

MR. CHIEF JUSTICE HILLIARD dissents.