No. 22502.

MARY B. COPPOM *v.* J. W. HUMPHREYS AND EVELYN O'BRIEN.
(467 P.2d 816)

Decided April 13, 1970.

MYRICK, CRISWELL and BRANNEY, JOHN A. CRISWELL, for plaintiff in error.

SARVAS & NATHENSON, DAVID W. SARVAS, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THIS is an action to enforce specific performance of an agreement for the sale and purchase of real estate. The action was brought by the defendants in error (plaintiffs), who were the purchasers, against the plaintiff in error (Mrs. Coppom), who was the vendor. The trial court ordered Mrs. Coppom to specifically perform her agreement to convey. We affirm.

Some of the testimony was in conflict. In our statement of facts, as to matters which were the subject of divergent testimony, we use the evidence supporting the findings of the trial court. *City of Littleton v. Employers Fire Insurance Co.,* 169 Colo. 104, 453 P.2d 810.

Shortly before the middle of February 1963, the parties signed the agreement, which consisted of a printed form with typewritten insertions in the blanks. By its terms Mrs. Coppom acknowledged receipt from the plaintiffs of $50. The plaintiffs agreed to pay a further price of $3,450: $450 thereof to be paid on or before the delivery of the deed, and the balance thereof in payments secured by a first mortgage on the property. The agreement further provided that the conveyance should be executed and delivered on or before March 1, 1963, and that:

"Time is of the essence hereof, and if any payment or any other condition thereof is not made, tendered, or

performed by purchaser as herein provided, then this contract shall be void and of no effect, and both parties hereto released from all obligations hereunder. . . ."

Immediately following execution of the agreement Mrs. Coppom permitted the plaintiffs to have access to the property. The plaintiffs cleaned up the yard which contained a deplorable amount of debris.

An attorney examined the abstract of title to the property and found that there was an unreleased deed of trust in which Mrs. Coppom was named as the beneficiary.

It was arranged that this attorney would handle the "closing." The closing date was first set for February 25, 1963, and at the request of Mrs. Coppom was then reset for February 27th. This turned out to be unsatisfactory to Mrs. Coppom and at her request the matter was again set for closing in the attorney's office on March 1, 1963. Prior to March 1, 1963, Mrs. Coppom had been told to bring to the closing the deed of trust mentioned in the title opinion, together with the note secured by the same, in order that arrangements could be made to release the deed of trust.

Prior to the closing the attorney prepared a deed for execution by Mrs. Coppom and a note and deed of trust which were executed by the plaintiffs. At the scheduled closing on March 1, 1963, Mr. Humphreys, one of the plaintiffs, wrote a check for the amount then payable to Mrs. Coppom, placing it on the attorney's desk. The attorney asked Mrs. Coppom to produce the outstanding deed of trust and note secured thereby. She had failed to bring them with her. The attorney then handed the check back to Mr. Humphreys and stated that the closing could not proceed until Mrs. Coppom produced the note and deed of trust. Arrangements were made for Mr. Humphreys to go to Mrs. Coppom's home that evening, obtain the note and deed of trust and leave the check. The parties contemplated that the attorney would complete the closing after he obtained the note

414

and deed of trust. Mr. Humphreys went to Mrs. Coppom's home that evening, but she was not there. When the plaintiffs were able to contact Mrs. Coppom two days later, she advised them that she had locked them out; that she was not going through with the transaction; that she was selling the property too cheap; and that they could deal with her attorney. At all times since then, Mrs. Coppom has had possession of the property.

The plaintiffs filed their action on June 3, 1963. Mrs. Coppom asserted a counterclaim for the cost of improvements made subsequent to March 1, 1963. The trial commenced on March 31, 1966. The court entered its findings, conclusions and decree on July 1, 1966. It concluded that plaintiffs were entitled to a decree of specific performance; that Mrs. Coppom was not entitled to reimbursement for the cost of improvements; that Mrs. Coppom was not entitled to be reimbursed for taxes paid or to receive payments or interest during the period of litigation; and that plaintiffs were not entitled to recover reasonable rental value of the property.

I.

■ The first argument of Mrs. Coppom is that this is an option under which the plaintiffs must prove strict compliance with the terms. The evidence adequately supports the finding of the court that on March 1, 1963, the "Plaintiffs were ready and able to perform pursuant to the agreement executed on February 12, 1963, but that Mrs. Coppom failed to produce proper documents necessary to evidence free and clear title to the subject property." Thereafter the plaintiffs did not change their position and their willingness to complete the matter remained constant. They were unable to locate her on the evening of March 1st, which was a Friday, and on the following Sunday she announced to them that she did not intend to complete the sale because the price was too low and from that time on they could deal with her attorney. After refusing to proceed, Mrs. Coppom did give some indication that she would

consummate the sale if the plaintiffs would pay the full sale price in cash. With her knowledge, the plaintiffs went to some trouble to raise the cash and, after they had done so, she still refused to proceed. The plaintiffs made timely filing of their complaint. In this proceeding in equity Mrs. Coppom is in no position to urge any fuller compliance by the plaintiffs.

## II.

 Mrs. Coppom contends that she cannot be required to perform since the tender of the money to be paid on closing was not sufficient in law nor was any tender "kept open." Under the circumstances of this case, in order to take advantage of the legal insufficiency of the tender, Mrs. Coppom should have objected to the form of tender and made her desires known as to how it should be kept open. This she failed to do. The case of *Shaner v. West Coast Life Ins. Co.,* 73 F.2d 681 arose in Colorado. It was there said:

"The offer was renewed early in the trial and not accepted. The agent had 'in the neighborhood of two hundred and thirty or two hundred and forty dollars' in currency at the time he made the offer to insured at the hospital. The offer was rejected without objection respecting its form or amount. When a party, able and willing to do so, offers to pay another a sum of money and is advised that it will not be accepted, the offer amounts to a tender without the money being produced. Refusal to accept it dispenses with the necessity to produce the money. The right is waived upon such refusal. The law does not require one to do a vain or useless thing."

See also *Spaulding v. Porter,* 94 Colo. 496, 31 P.2d 711; *Boothroyd v. Board of Com'rs. of Larimer County,* 43 Colo. 428, 97 P. 255; and *Montelius v. Atherton,* 6 Colo. 224.

## III.

 Mrs. Coppom attributes importance to the fact that the attorney prepared a note and deed of trust

instead of a note and mortgage. The agreement had been prepared by a non-lawyer. We can take judicial notice of the fact that in Colorado non-lawyers, and even attorneys, use the term "mortgage" when in fact a deed of trust is intended. We can take additional judicial notice that in Colorado real estate transactions a deed of trust, rather than a real estate mortgage, is most commonly used — and this has been true for many years. Therefore, we find that the difference between the wording in the agreement and the document prepared is an insignificant variegation. Further, the rule applied to tender also applies here: Mrs. Coppom's reluctance to proceed with the transaction did not come as a result of the change from mortgage to deed of trust. She made no objection to this form of lien. She is foreclosed from what amounts to a purely semantic objection made here.

## IV.

The remaining point to be considered is the alleged error on the part of the court in denying judgment to the defendant on her counterclaim against the plaintiffs for costs of improvements made by her. At the time of the making of the agreement the house was in a run-down condition. The house had been heated by a circulating (apparently gas) heater, which the gas company had found to be unsafe. Shortly after March 1, 1963, Mrs. Coppom had a furnace installed in the house at a cost of $600 and, prior to the filing of the complaint on June 3, 1963, had incurred the expense of a few hundred dollars in the cost of other improvements. Between the time of commencement of the action and trial, first Mrs. Coppom and later her son and daughter-in-law occupied the residence. During this period she paid the taxes on the property and made some additional improvements. We found no evidence in the record indicating that the cost of improvements was reasonable. At no time did she consult with the plaintiffs with respect to improvements proposed to be placed upon the premises, and particularly with respect to the

installation of the furnace. It is significant that most of her expenditures were for improvements to make the property inhabitable, as distinct from maintenance repairs.

On this issue we have not been given the benefit of any authorities in the briefs, except two cases cited by Mrs. Coppom which are laches and estoppel cases not applicable here. So far as we are advised, this point has not been passed upon by this court. We notice some difference in opinion in the authorities as exemplified by *Pearce v. Third Avenue Improvement Co.*, 221 Ala. 209, 128 So. 396; *Fitzpatrick v. Allied Contracting Co.*, 24 Ill.2d. 448, 182 N.E.2d 183; *Lidikevicz v. Kopala*, 315 Ill. 404, 146 N.E. 461; *Blenkenhorn v. Edgar*, 193 Iowa 184, 186 N.W. 893; and Annot., 7 A.L.R.2d 1204. It may be possible to draw a distinction between improvements on the one hand and maintenance repairs on another. However, in the posture of this case, we need not reach a conclusion as to the possible effect of such a distinction. Rather, we simply follow the statement made in 7 A.L.R.2d 1230 as follows: "The question whether the vendor is to be allowed for improvements made by him to the property . . . depends on the equity of the particular situation." This is a specific performance case in equity. Considering the conduct of Mrs. Coppom (as presented by the plaintiffs) and the fact that she has had the use of the premises without payment of rental, the trial court was well within its province in finding it equitable not to give judgment on the defendant's counterclaim.

Judgment affirmed.

Mr. Justice Day, Mr. Justice Hodges and Mr. Justice Lee concur.