**Robert R. STENBACK,**
**Plaintiff–Appellee,**

v.

**FRONT RANGE FINANCIAL CORPORATION, formerly known as G.I.B., Inc.; Brush Industrial Bank; and Greeley Industrial Bank, Defendants–Appellants.**

No. 87CA0262.

Colorado Court of Appeals,
Div. IV.

Oct. 13, 1988.

Epperson, McClary, Zorn & McClary, Donald F. McClary, Fort Morgan, for plaintiff-appellee.

Dinner, Hellerich and Lazar, Melvin Dinner, Charles J. Connell, Greeley, for defendants-appellants.

HUME, Judge.

Front Range Financial Corp., Brush Industrial Bank, and Greeley Industrial Bank, defendants (Banks), appeal a judgment which imposed an equitable lien in favor of plaintiff, Robert R. Stenback, against real property belonging to the Banks. The judgment awarded Stenback $68,106.04 plus interest and costs on Front Range Financial Corporation's promissory note and imposed an equitable lien upon the real property in question. We do not address the issue raised by the Banks con-

cerning the imposition of the lien, but rather agree with Stenback that the matter is moot because the judgment has been satisfied by foreclosure and sale of the real property which was the subject of the lien. Accordingly, we dismiss the appeal.

The disputed judgment was entered on November 18, 1986. Thereafter, the Banks filed their motion for post-trial relief pursuant to C.R.C.P. 59, followed by their motion for stay pending disposition of the C.R.C.P. 59 motion. Stenback filed a petition for an order directing foreclosure and sale of the property subject to the lien.

The court established a briefing schedule, and following the filing of the parties' briefs, it entered an order denying the Bank's motions for post-trial relief and for a stay, and granted Stenback's motion by entering an order directing the sheriff to sell the subject property. Subsequently, a notice of sheriff's sale was issued fixing the date of sale for March 3, 1987.

The Banks filed their notice of appeal on February 18, 1987, together with their motion for stay of execution pending appeal. In the motion for stay of execution, the Banks stated the following:

"7. The central issue ... upon appeal ... is whether ... the Plaintiff is entitled to an equitable lien upon the subject real property. If the plaintiff were permitted to foreclose and sell the ... property ... *the* central *issue* before the Colorado Court of Appeals ... *would be rendered moot.*

. . . .

"9. The subject real property and the improvements ... thereon are ... unique. If a stay of execution is not granted ... and if the Plaintiff proceeds to sell ... the ... property at sheriff's sale ... *the issue of [plaintiff's entitlement] to an equitable lien ... would be rendered moot.*

. . . .

"10. A stay of execution ... would cause no prejudice to ... Plaintiff [Sten-

back] ... *since the defendants will be filing supersedeas bond....*

. . . .

"11. The defendants hereby represent to the Court that they are ready, willing and able to post with this Court a supersedeas bond in the amount of $68,106.04 ... *or in such amount as determined by this Honorable Court.*" (emphasis added)

The motion specifically requested that the court enter an order fixing the amount of the supersedeas bond and directing that the clerk, upon the filing of such a bond, issue a certificate of stay of execution.

By order dated February 20, 1987, the trial court granted the Banks' motion for stay of execution, conditioned upon their posting a supersedeas bond for $94,000, and directed that the clerk issue a certificate of stay of execution when the condition was met. No supersedeas bond was posted, but the clerk erroneously issued a certificate of stay of execution on February 27, 1987, and mailed copies of the order and certificate to the Banks' counsel.

The Banks' counsel returned the clerk's certificate on March 5, 1987, with a cover letter advising that:

"[T]he Defendants ... will not be posting a supersedeas bond for a stay of proceedings.... Since the Defendants will not be posting the bond, *the Certificate of Stay of Execution should not have been issued....*" (emphasis added)

The Banks made no further requests for stay of execution of the judgment, either in the trial court pursuant to C.R.C.P. 62(d), or in this court pursuant to C.A.R. 8. Nor did they file any objection to the amount or character of the bond required by the court's order, or request any hearing to review or modify the conditions of the stay order.

The property was sold at the sheriff's sale on March 3, 1987, when Stenback bid in the property for the amount of the judgment plus fees, costs, and interest to the date of sale. Stenback received a certificate of purchase in exchange for his bid of $70,425.08.

On March 12, 1987, the Banks' counsel acknowledged Stenback's purchase for the "full amount of the judgment plus interest and costs ... [with] no deficiency to be claimed" and requested that Stenback release shares of stock he held as additional security for the judgment "as they are no longer needed for security for any indebtedness." The Banks did not redeem the property after foreclosure and a sheriff's deed was executed in favor of Stenback on June 1, 1987.

Stenback contends that the Banks' post-judgment conduct reflected by the foregoing chronology indicates their voluntary relinquishment of their right to stay execution. He further contends that the circumstances warrant the conclusion that the judgment has been voluntarily satisfied, thus mooting the Banks' only issues on appeal. We agree.

When the record reveals a judgment has been satisfied, a court may dismiss an appeal on its own motion because there is "no longer a judgment to be reviewed." *Knowles v. Harrington*, 45 Colo. 346, 101 P. 403 (1909). In *Bull v. Doss Brothers Electric Construction Co.*, 51 Colo. 459, 119 P. 156 (1911), an appeal was dismissed as moot where a debtor was found as voluntarily having paid a judgment after posting a supersedeas bond staying execution pending appeal.

In contrast, in *Reserve Life Insurance Co. v. Frankfather*, 123 Colo. 77, 225 P.2d 1035 (1950), the court refused to dismiss as moot an appeal from a money judgment which had been paid after writs of execution and garnishment were issued and served upon the judgment debtor's depository bank. There the stay of execution and an extension thereof had expired after the transcript of the record had been lodged in the appellate court. The court found that the debtor's failure to obtain an additional stay resulted from inadvertence or oversight, and that no voluntary satisfaction had occurred by virtue of the lapse, which exposed the debtor to the Hobson's choice of either paying the judgment or facing garnishment proceedings.

■ In *Frankfather*, the Supreme Court did not overrule its own seemingly contradictory prior decisions. Instead, it carefully distinguished each of those earlier decisions, and determined *Frankfather* on its own facts. Thus, we interpret *Frankfather* to hold that a party's compliance with a court's order or decree, standing alone, will not be deemed a voluntary satisfaction of judgment sufficient to preclude his right to appeal. However, additional evidence, which shows either directly or by implication that a party's compliance was a consciously performed voluntary act, may be considered in deciding whether satisfaction should bar his appeal.

■ Applying that standard to the record before us, we are satisfied that the Banks made a conscious and voluntary choice to allow the property to be sold to satisfy the judgment. The Banks were aware of the nature and consequences of the judgment, and that a stay of execution was available to them; they indicated they were ready, willing, and able to comply with the conditions established by a court order granting the stay; they expressly disclaimed their desire to stay the execution mandated by the very judgment they now seek to challenge; and their request for release of additional security because of full payment was tantamount to their acknowledgment of satisfaction of that judgment.

In exposing the property for sale at the sheriff's sale, the Banks were aware that the property might be placed beyond the jurisdictional reach of the court. If the property were conveyed at or after the sale to a bona fide purchaser, it would then be unavailable to further court process in these proceedings. The Banks' awareness of these circumstances is clearly expressed in their motion for stay of execution, in which they state, in effect, that their unique property would be subject to loss and the issues on appeal would be rendered moot absent the stay. Their subsequent election not to satisfy the conditions required to obtain the stay can be deemed nothing other than a conscious and voluntary choice to allow the property to be sold

in order to satisfy the judgment. The Banks' acknowledgment of satisfaction of judgment in their March 12 letter, coupled with their request for release of other security, again indicated their intent that the judgment be deemed satisfied and extinguished by the application of their property to the judgment debt. That intent is further revealed by the Banks' decision not to redeem the property, thereby once again failing to assure that it would remain available to the court's jurisdiction for entry of possible remedial orders.

Moreover, the Banks benefitted from the judgment imposing the lien by their own election to let the sale proceed. The accrual of interest on the judgment terminated upon sale of the property and satisfaction of the judgment. The judicially imposed equitable lien was liquidated by the sale which satisfied the money judgment. Since no supersedeas bond was posted, were we now to set aside the lien on appeal, there is no existing pledge of security to satisfy the undisputed money judgment for $68,106.04 plus interest to date.

We assume that C.R.C.P. 62(d) and C.A.R. 8 are designed to serve the legitimate purpose of providing assurance that judgments are capable of enforcement at the end of the appellate process. While those rules should not be used as unjust or arbitrary screening devices to prevent appeal by persons who cannot post security, neither should they be ignored by the courts in favor of judgment debtors capable of complying with their terms to the detriment of judgment creditors.

Under the particular circumstances presented here, we conclude that there is no existing judgment to be reviewed.

THE APPEAL IS DISMISSED.

BABCOCK and NEY, JJ., concur.