Don **FRIEDMAN**, individually, and as General Partner of Wikiup Mobile Home Club, a Colorado limited partnership, Petitioner–Appellee and Cross–Appellant,

v.

**COLORADO NATIONAL BANK OF DENVER**, individually, and as Personal Representative of the Estate of William Henry Conter, a/k/a William H. Conter, a/k/a William Conter, Deceased, Respondent–Appellant and Cross–Appellee.

No. 90CA0248.

Colorado Court of Appeals,
Div. III.

Aug. 1, 1991.

As Modified on Denial of Rehearing
Oct. 17, 1991.

Certiorari Granted March 10, 1992.

Horowitz & Berrett, P.C., Jay S. Horowitz, Kim E. Ikeler, Peter N. Simon, Denver, for petitioner-appellee and cross-appellant.

John S. Pfeiffer, Denver, for respondent-appellant and cross-appellee.

Opinion by Judge CRISWELL.

Defendant, Colorado National Bank of Denver (the bank), appeals from the judgment of the trial court decreeing the specific performance of an option contained within a limited partnership agreement. This option permitted plaintiff, Don Friedman, to purchase the interest of a deceased limited partner, whose estate is being administered by the bank. Plaintiff cross-appeals from the court's dismissal of his claims against the bank for tortious interference with contract, rejection of his claim for consequential damages, award to the bank of interest on the option price, and rejection of his request for attorney fees. We affirm in part, reverse in part, and remand with directions.

The decedent, William Conter, was a limited partner with plaintiff in the Wikiup Mobile Home Club (Wikiup), a Colorado limited partnership, which owned and managed a mobile home park. Plaintiff, as the general partner, was responsible for Wikiup's management. He was also one of two limited partners and divided the partnership profits equally with the decedent.

According to the partnership agreement:

"In the event of the death of a Limited Partner, the General Partner shall have the right to purchase the entire interest of such Limited Partner.

. . . .

The price to be paid shall be equal to the value of the decedent's partnership interest as of his date of death as submitted for federal estate tax purposes. Payment shall be made in four equal semiannual installments, including interest, beginning four months after election to purchase, and any balance shall bear interest at 7% per annum.... Election to purchase the decedent's interest ... shall be made within 60 days after the delivery to the surviving partner of an appraisal, accompanied by a letter stating that the appraisal will be (or has been) used in the decedent's federal estate tax return...."

In 1981, the decedent executed a revocable trust and made his limited partnership interest a part of the corpus of that trust. He named the bank as trustee, and upon decedent's death on January 11, 1986, the bank was appointed the personal representative of his estate.

Upon decedent's death, plaintiff sought to exercise his option to purchase, but he and the bank initially could not agree upon the purchase price, and later, the bank refused to recognize plaintiff's right to purchase. Plaintiff then brought this action against the bank, in its representative capacity, seeking specific performance of the option provisions and consequential damages for the bank's breach of contract. In addition, he sought damages against the bank in its individual capacity for tortious interference with his contract with the decedent. The trial court dismissed plaintiff's claims for tortious interference prior to trial, and the trial proceeded before an advisory jury on the other issues raised.

After completion of the evidence, the court submitted special interrogatories to the jury as to whether the actions of the bank in determining the value of the limited partnership interest and in refusing to allow plaintiff to exercise his option rights involved either dishonesty, actions taken in knowing and reckless disregard of the rights of plaintiff, or failure to exercise an honest judgment. The jury returned a special verdict finding that the bank's actions were of such character, and the trial court adopted that finding as its own. The court also accepted the jury's finding as to the value of the partnership interest. Accordingly, the court entered a decree of specific performance, directing the sale of the limited partnership interest to plaintiff. However, the court rejected the jury's determination that plaintiff had sustained $1,300,-000 in consequential damages, representing lost profits.

After adopting these findings, however, the court appointed a special master to determine whether the value of the partnership interest, as testified to by the appraiser whose opinion had been accepted by the court, included a valuation of all assets of the partnership or merely the value of the real estate owned by it. After further evidentiary hearings, the master found that the appraiser's value included all assets of the partnership, and the court adopted the master's report as a part of its findings.

### I. *Jurisdictional Questions*

Each of the parties has asserted, for differing reasons, that this court lacks jurisdiction to proceed to a determination of the substantive issues raised in the appeal and cross-appeal. We are not persuaded by either assertion.

### A.

██ The bank argues that, because the district judge who sat on the trial of this case resigned her position before entering a final judgment, the successor district judge lacked jurisdiction to enter a judgment and that we must, therefore, direct a new trial of all of the issues. We disagree.

If a judge, after sitting on a case and adopting findings of fact and conclusions of law, is, for any reason, unable to perform his or her duties in regard to that action, any other judge may perform those post-trial duties. C.R.C.P. 63; *Faris v. Rothenberg*, 648 P.2d 1089 (Colo.1982). While such successor judge may grant a new trial if he or she determines that the remaining post-trial duties cannot be performed, their performance is generally possible, unless their performance would require passing upon the credibility of witnesses heard by the initial judge. *See Faris v. Rothenberg, supra.*

It is, therefore, not necessary under C.R.C.P. 63 that the initial judge's order be a "final judgment." Once that judge has adopted sufficient findings of fact so that no further issues of credibility are presented, a successor judge may take those actions necessary to "finalize" an appropriate judgment.

Here, the judge who presided at trial adopted detailed written findings of fact and conclusions of law, which covered all issues except the question of the bank's claim that plaintiff did not come to court with "clean hands." However, the trial court had already expressly rejected this defense in its previous oral findings.

The rules require only that the findings be sufficient to give an appellate court an understanding of the grounds relied upon by the trial court. *See In re Marriage of Van Inwegen*, 757 P.2d 1118 (Colo.App. 1988). In light of the oral and written findings adopted by the court here, that requirement was fulfilled by the initial judge.

Moreover, although the initial judge's order caused the court to retain jurisdiction for purposes of prescribing the forms of documents needed to implement the court's decree, we consider that provision to be nothing more than a means of enforcing its decree; such provision did not make the court's findings and conclusions incomplete for purposes of C.R.C.P. 63, nor did the later approval of such forms require any credibility resolution.

■ Likewise, the successor judge's determination of the propriety of the initial judge's award of attorney fees was a determination of a legal issue, which C.R.C.P. 63 allowed that judge to pass upon. *See Faris v. Rothenberg, supra.*

Hence, we conclude that the initial trial judge's order adopting findings of fact and conclusions of law was sufficient to allow the successor judge to perform the post-trial duties involved.

### B.

In his jurisdictional challenge, plaintiff asserts that the issues raised by the bank in its appeal were rendered moot when the bank complied with the court's equitable decree to transfer the limited partnership to him. We disagree.

■ If an appellant voluntarily complies with an equitable decree or voluntarily satisfies a judgment at law, such action may render moot any appeal from that decree or judgment. *Van Schaack Holdings, Ltd. v. Fulenwider,* 798 P.2d 424 (Colo.1990) (voluntary adoption of corporate dissolution plan in compliance with court order for dissolution).

However, mere compliance with an equitable decree does not, standing alone, evidence an intent voluntarily to comply with the decree so as to render any appeal from that decree moot. This is so because:

"Plaintiff cannot tie up defendant with a permanent writ of injunction, and then declare the case to be moot because the party enjoined does not defy the order of court....

....

[W]here a judgment debtor, in obedience to the order of court or under compulsion of an execution, satisfies the judgment rendered against him, he does not thereby waive his right to have the judgment reviewed on writ of error by this court. In the event the judgment is reversed, the judgment debtor is entitled to complete restoration of his property or rights in accordance with the mandate of [the] court."

*Reserve Life Insurance Co. v. Frankfather,* 123 Colo. 77, 225 P.2d 1035 (1950), relying on and quoting from *Bray v. Trower,* 87 Colo. 240, 286 P. 275 (1930). *See also Oken v. Hammer,* 791 P.2d 9 (Colo. App.1990) (even if judgment is satisfied by voluntary agreement, appeal is not rendered moot if that agreement provides for repayment in the event of a successful appeal).

■ Here, after the court entered its decree of specific performance, plaintiff petitioned the court to hold the bank in contempt for its failure to comply with that order and to require the bank to comply with its decree or, in the alternative, to require the bank to post a supersedeas bond in the amount of eight million dollars. In response, the bank requested a stay of the court's decree to be secured by a supersedeas bond for five hundred dollars.

The court declined to hold the bank in contempt, but it did direct both parties to execute all necessary documents to carry out the court's decree and to deposit them with the court. It also ordered that, if the bank posted a $100,000 supersedeas bond, the clerk would retain possession of all documents pending any appeal, but if such bond were not posted, the assignment documents would be delivered to plaintiff and plaintiff's promissory note would be delivered to the bank.

The bank, claiming a financial inability on behalf of the estate to do so, declined to post the supersedeas bond in the amount required. Consequently, both parties complied with the court's specific performance decree.

Plaintiff asserts that this court's opinion in *Stenback v. Front Range Financial Corp.,* 764 P.2d 380 (Colo.App.1988), requires the conclusion that the bank's failure to post a supersedeas bond in order to stay the effect of the court's equitable decree renders its appeal moot. We do not consider *Stenback* to require such a result.

*Stenback* recognized that the question of claimed mootness arising from a party's compliance with a court's order is whether such compliance resulted from a threat of coercion or whether it was a purely volun-

tary act. There, because the defendant had initially agreed to post a supersedeas bond and had not registered any objection to the amount of the bond required by the court, but had later consciously decided not to post such a bond and had requested the return of other property deposited as security for the judgment, he had made a "conscious and voluntary choice" to allow the judgment to be satisfied. *Stenback* did not determine that a failure to post a supersedeas bond is, in and of itself, the equivalent of a voluntary settlement of the judgment. Indeed, such a determination might be inconsistent with the rationale expressed in *Reserve Life Insurance Co. v. Frankfather, supra.*

In any event, the bank, unlike the defendant in *Stenback,* did not agree to post a supersedeas bond, objected to the amount set by the court, and was faced with a charge of contempt for failing to abide by the court's order. Under these circumstances, we cannot conclude that its compliance was voluntary. Hence, its appeal is not moot.

## II. *The Bank's Appeal*
### A.

The bank argues first that, because plaintiff committed breaches of the fiduciary obligations owed by him to the limited partner, the equitable remedy of specific performance was not available to him. It asserts that plaintiff violated the partnership agreement and his fiduciary obligations, prior to its refusal to transfer decedent's interest to him, by failing to distribute all of the profits for 1985 and 1986 and by taking a management fee in violation of the express terms of that agreement. We disagree.

■ In equity, "[t]he party who commits the first substantial breach of a contract is also deprived of the right to complain of a subsequent breach by the other party." *Scientific Packages, Inc. v. Gwinn,* 134 Colo. 233, 301 P.2d 719 (1956). However, while an unreasonable delay or a default in the performance of a party's obligations under a contract may bar that party from seeking specific performance, *White v.*

*Greenamyre,* 77 Colo. 33, 234 P. 164 (1925), the right to object to any such default may also be lost through the operation of waiver or estoppel, especially if the misconduct of the party making the objection has contributed to that default. *See Price v. Immel,* 48 Colo. 163, 109 P. 941 (1910); *Howard v. Interstate Development Co.,* 29 Colo.App. 287, 483 P.2d 1366 (1971).

■ Here, the trial court found that the bank, through a combination of waiver and a failure to exercise good faith, was estopped from raising any prior breaches of the partnership agreement by plaintiff as a defense. The court also found that any such breach by plaintiff was not a substantial breach going to the essence of the agreement so as to bar the equitable enforcement of that agreement.

### 1.

The bank contends that these findings and conclusions were erroneous. It argues that some $280,000 in partnership assets, carried in an account designated as "cash reserve for replacement of depreciable assets," consisted of undistributed profits for 1985. Thus, the bank argues, because plaintiff failed to distribute those profits in accord with the partnership agreement, he was in breach of that agreement at the time he sought to exercise his purchase option.

The partnership agreement provided that: "Distribution of any profits of the Partnership business shall be made no less frequently than annually." However, the same provision also decreed that: "The parties may agree to reserve a certain portion of the distributable profits of the business to provide for the reasonable future needs of the business."

The trial court specifically found that the general partner had created such a reserve account in the late 1970s and had added to that account from time to time thereafter. The court also found that, although there was no express agreement between the parties that such a sum could be withheld from distribution for this purpose, over the years both the decedent and the bank had

acquiesced in this practice. The court also found that this practice was in accord with generally accepted accounting procedures and was supported by the reasonable needs of the partnership business. Finally, the trial court found that the bank's failure to make any objection to this practice, until plaintiff attempted to exercise his purchase option, represented not just its acquiescence in the practice, but was part of the bank's bad faith effort to avoid its obligation under the contract.

Because these findings are supported by the record, they are binding on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## 2.

Although the trial court adopted the master's findings with respect to the value of decedent's limited partnership interest, it rejected the master's conclusion that the estate was not entitled to any of the undistributed profits for 1986. Accordingly, the court awarded the bank $74,000 as decedent's interest in the undistributed profits for that year. The bank now argues that this award constitutes a finding that plaintiff did not properly distribute all profits due to the bank for 1986 and is inconsistent with the court's finding that plaintiff did not materially breach the partnership agreement. In contrast, plaintiff in his cross-appeal asserts that the court erred in awarding any of the profits for 1986 to the bank. We agree with plaintiff.

The partnership agreement states that the limited partnership interest is to be valued as of the date of death of the limited partner. The limited partner died on January 11, 1986; consequently, his estate is entitled to the fair market value of his partnership interest as of that date, including his share of any profits that accrued before that date. But, profits earned after the date of decedent's death would not influence the amount to be paid for his interest. Hence, the bank was not entitled to be paid any of the 1986 profits beyond those amounts earned before January 11.

## 3.

The bank also asserts that plaintiff breached the fiduciary duty owed to the decedent by taking a management fee in violation of the partnership agreement. Again, we disagree.

When the partnership's long-time resident manager ceased acting as such, there was considerable difficulty in finding a suitable replacement. In addition, because the vacancy ratios in mobile home parks were increasing considerably, plaintiff concluded that it was necessary to make mobile homes available for sale to prospective tenants. In discussions with the bank as trustee for the decedent, however, plaintiff was informed that the bank did not want to become involved in any mobile home sales program.

As a result, plaintiff established a corporation in which he and a third party held the sole interests. This third party acted in the place of the former resident manager and, in addition, commenced a mobile home sales program.

The corporation derived income from two sources. First, it bought mobile homes and sold them to prospective tenants pursuant to installment sales contracts. Second, it was paid eight per cent of the partnership's gross revenues as compensation for performing the managerial services the partners' previous resident manager had been performing.

While this latter fee was somewhat higher than that paid by other mobile home parks, the bank does not contend that the amount of this fee was unreasonable. It does assert, however, that, because plaintiff had a substantial interest in the corporation receiving such fee, its receipt of the same constituted the receipt of a fee by plaintiff.

The trial court found, however, that, given the circumstances established by the evidence, any breach of the agreement by plaintiff in this respect was not substantial. It also found that the bank's failure to object to the management agreement when it became aware of it constituted a waiver on its behalf of any claim that its terms violated the partnership agreement. Final-

ly, it found that the bank's statements to plaintiff and its inaction upon this subject were designed to lead plaintiff into a technical breach of the partnership agreement so that the bank could plausibly avoid its obligations under that agreement.

The evidence supports the trial court's finding that, if plaintiff violated the partnership agreement by receiving any funds under the management agreement, such violations did not go to the essence of the partnership agreement so as to prevent a court in equity from awarding the relief of specific performance. *Compare Town of Glenwood Springs v. Glenwood Light & Water Co.*, 202 F. 678 (8th Cir.1912) (specific performance will not ordinarily be granted to a party guilty of a substantial breach of the contract) *with Coppom v. Humphreys*, 171 Colo. 410, 467 P.2d 816 (1970) (insignificant breach of contract will not prevent granting of specific performance).

The bank insists, nevertheless, that every breach of any fiduciary obligation arising from a partnership agreement must be considered to be an essential breach so as to deprive the fiduciary of the right to insist upon specific performance of that agreement. We conclude, however, that equity should not adopt such an all-inclusive rule.

On the contrary, if, as here, the fiduciary is not guilty of any fraudulent intent and makes full disclosure to the other party of his actions, who does not object thereto, and if the claimed breach of fiduciary obligation depends upon the meaning to be placed upon the written terms of the agreement, the application of which are reasonably disputed, there is no reason to insist that such a breach must, as a matter of law, be considered to be a material breach. Rather, the court, in the exercise of its equitable discretion, should assess each case on its own merits.

Here, the court determined that plaintiff's breach of any fiduciary obligation was not material and had been waived by the bank. These findings are supported by the record and justify the trial court's conclusion.

### B.

The bank next argues that the trial court, in determining that the bank acted in bad faith, did not give "full consideration" to the bank's duty to the heirs of the estate to make every reasonable effort to sell the limited partnership interest at the best price attainable. We disagree.

The trial court interpreted the option provision of the partnership agreement, which established the purchase price for the limited partnership interest as the value reported by the decedent's estate for tax purposes, to require the bank to exercise good faith judgment in establishing such value. Thus, it required plaintiff, in order to be awarded a decree of specific performance, to establish, at a minimum, that the bank failed to exercise a reasonable, good faith judgment in establishing the value of the partnership and in refusing to transfer that interest to him.

However, both the advisory jury and the court found that plaintiff's evidence went beyond this minimum requirement. They both found that the bank's efforts to obtain a second appraisal upon which to base its valuation of the partnership interest were tinged with dishonesty, bad faith, or the failure to exercise an honest judgment. Thus, the court rejected the appraised value contained within this second appraisal and, instead, substituted a lower figure which had been established by the bank's first appraiser, but rejected by the bank. It is this finding that the bank challenges on the ground that the trial court did not give sufficient weight to the bank's fiduciary duty to the beneficiaries of the estate.

However, there is a covenant of good faith and fair dealing that adheres by law in every contract. Restatement (Second) of Contracts § 205 (1981). *See Scrima v. Goodley*, 731 P.2d 766 (Colo.App. 1986) (Tursi, J., dissenting). And, no fiduciary duty imposed upon a personal representative constitutes a grant of authority to that fiduciary to violate this contractual duty of good faith.

### C.

The bank also argues that it is entitled to an accounting for "management fees" and "undistributed profits." We conclude, however, that the bank has already received this accounting.

The evidence is undisputed that a monthly financial statement was provided by plaintiff to the bank, reflecting partnership finances as of December 31, 1985, less than two weeks before the decedent's death. This statement served as the basis for the appraiser's report, which was subsequently adopted by the trial court as the basis for its valuation of the limited partnership interest. Further, this 1985 financial statement included information respecting the corporation formed by plaintiff and the third party.

Finally, to the extent that the bank is arguing that it is entitled to undistributed profits for 1986, we have already rejected that contention.

### D.

■ The bank next argues that the trial court erred by adopting the master's findings without allowing ten days for the bank to object, as it is authorized to do under C.R.C.P. 53(e)(2). In addition, it argues that the special master improperly evaluated plaintiff's partnership interest. While we conclude that the bank was provided with an opportunity to raise its objections, both in open court and in briefs previously submitted by the parties, we hold that the master's findings concerning the valuation of the partnership interest are not supported by the record and were, therefore, improperly adopted by the trial court. Accordingly, we reverse the trial court's order as to the value to be applied to the limited partnership interest.

Both the jury and the special master found, and the trial court adopted this finding, that the value of the limited partnership interest was $1,900,000 as of the date of death of the limited partner. This finding was, as noted, based upon the first appraisal received by the bank. This appraisal was introduced into evidence, and the appraiser testified before the special master.

However, both from the written appraisal itself and from the appraiser's uncontradicted testimony before the special master, it is clear that this appraisal did not value all of the partnership assets as of the date of death, as required by the partnership agreement. In his testimony before the master, the appraiser was specific in stating that he appraised only the real estate and certain equipment and disregarded all other partnership assets and income not directly attributable to that real estate. Thus, the appraiser did not consider any of the other partnership assets which, together with the appraised partnership real estate and equipment, contributed to the value of decedent's limited partnership interest on the date of his death.

The partnership financial statements introduced at trial established that, shortly before the date of death of the limited partner, the partnership had total net assets, based on cost less depreciation, of $392,447, of which only $188,640 were attributable to property and equipment valued by the appraiser. Thus, there was some $203,808 of net partnership assets which were not included in this appraisal, most of which were in the form of cash reserves. One half of this interest, or $101,904, should have been added to the appraised value of the real estate and equipment in order to reflect the full value of the decedent's limited partnership interest.

Therefore, upon remand, the trial court should revise its judgment to include this amount as a part of the purchase price.

### III. *Plaintiff's Cross–Appeal*
### A.

Plaintiff first asserts that the trial court erred by dismissing his claim against the bank in its individual capacity for tortious interference with the partnership contract between him and the decedent. We agree.

■ A claim for intentional interference with contractual obligations requires proof of the existence of a contract between the

plaintiff and a third party and of the defendant's inducement of the third party not to perform the contract, or other interference with that third party's performance of the contract. *See CJI–Civ.3d* 24:1 (1990).

Here, the trial court held that the bank, as personal representative of the estate of the decedent, "stepped into the shoes" of the decedent with respect to the partnership agreement so that, with respect to the decedent, the bank could not be looked upon as a third party. Accordingly, the court dismissed plaintiff's claim for tortious interference with the partnership agreement between plaintiff and the deceased limited partner. We conclude that the court erred in doing so.

■ While it is true that a party to a contract cannot be liable for tortious interference with that contract, an agent of an organization may be liable for interference with a contractual relationship between that organization and a third party. *Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985); *Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385 (Colo.App.1985).

Section 15–12–808(1), C.R.S. (1987 Repl. Vol. 6B) provides that a personal representative is not individually liable on a contract properly entered into by him in his fiduciary capacity, unless the contract states otherwise. However, a "personal representative is individually liable for … torts committed in the course of administration of the estate … if he is personally at fault." Section 15–12–808(2), C.R.S. (1987 Repl.Vol. 6B).

■ The bank, as personal representative of decedent's estate, was a "party" to the partnership agreement only in a nominal or representative capacity, as agent of the estate or the heirs. It assumed no *personal* liability to perform decedent's obligations under the partnership agreement. In such circumstances, the courts have held that a personal representative is liable for its tortious interference with a contract between the decedent and a third party. *See Bailey v. Meister Brau, Inc.*, 378 F.Supp. 869 (N.D.Ill.1973), *aff'd*, 535 F.2d 982 (7th Cir.1976).

Consequently, we conclude that the trial court erred in dismissing plaintiff's claim for tortious interference with the contractual relations between plaintiff and the decedent.

## B.

■ Plaintiff also claims that the trial court erred in dismissing his claim seeking punitive damages against the bank in its individual capacity for breach of the implied covenant of good faith and fair dealing contained in the partnership agreement. We disagree for two reasons.

First, as previously noted, under § 15–12–808(1), the bank was not individually liable as a party to the contract between plaintiff and the limited partner. Thus, this claim would be properly asserted against the estate, rather than against the bank individually.

Second, although the covenant of good faith and fair dealing is implied at law in every contract, *see* Restatement (Second) of Contracts § 205 (1981), breach of this covenant does not generally give rise to an independent tort claim. *See Centennial Square, Ltd. v. Resolution Trust Corp.*, 815 P.2d 1002 (Colo.App.1991). And, except in certain specified instances, the award of punitive damages in breach of contract actions is uniformly prohibited. *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900 (Colo.1987).

An exception to the rule prohibiting the award of punitive damages in an action for breach of the duty of good faith and fair dealing has been created in the case of the breach of this covenant by an insurance carrier. In that instance, a breach of such duty can give rise to an independent claim in tort for punitive damages because of the quasi-fiduciary relationship between the insurer and the insured. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984); *Flickinger v. Ninth District Production Credit Ass'n*, 824 P.2d 19 (Colo.App.1991).

Generally, however, a limited partner is not a fiduciary of the general partner. Instead, the limited partner is simply a business investor who possesses capital to in-

vest in a business enterprise and desires to reap a share of the profit of the business, but does not wish to become generally liable for the debts of the firm or put at risk more capital than he contributed. *See Evans v. Galardi,* 16 Cal.3d 300, 128 Cal. Rptr. 25, 546 P.2d 313 (1976). Hence, the relation of the bank, as the representative of the limited partner, to plaintiff was not similar to the relation of an insurer to an insured for purposes of the award of punitive damages.

Therefore, the trial court properly dismissed plaintiff's claim for punitive damages against the bank for breach of the covenant of good faith and fair dealing.

### C.

Plaintiff also argues that the trial court erred in not adopting the jury's verdict respecting the consequential damages allegedly suffered by plaintiff because of the failure of the partnership to sell the mobile home park at an advantageous price. We disagree.

The trial court submitted a special interrogatory to the jury on the issue whether plaintiff could have sold the mobile home park in either 1986 or 1987. The jury found that he could have sold the mobile home park in 1987, but that the actions of the bank prevented him from doing so, thereby damaging him in the amount of $1,300,000. The court, however, concluded that the evidence was insufficient to establish any damages.

Plaintiff argues that there was evidence to support the jury's finding of damages and that, even if the court's ruling was correct, he was entitled to a further opportunity to prove the amount of damages suffered by him.

■ The partnership agreement gives the general partner the express authority to execute any "contract to sell any property, real or personal, for or of the partnership...." It provides, however, that the limited partner "must consent to any sale or disposition" by the general partner "of any substantial portion or all of the partnership's assets." Since the mobile home

park constituted the major portion of the partnership's assets, the bank, as representative of the estate of the limited partner, would have had to consent to any sale of the park.

The evidence indicated, however, that, while plaintiff made some efforts to sell the property, there was never any firm offer made by any third party to buy that was acceptable to plaintiff. Consequently, plaintiff never solicited the consent of the bank to accept any offer to sell. Thus, there was no evidence presented that the bank's actions "prohibited" the sale of any of the partnership assets, the sole theory upon which plaintiff's claim for consequential damages was based.

For this reason, we hold that the trial court properly dismissed plaintiff's claim for consequential damages, irrespective of the nature of the proof of any alleged damages plaintiff may have suffered.

### D.

Plaintiff also argues that the trial court erred in granting the bank interest payments on the unpaid balance of the purchase price of the partnership interest from the date at which the sale of decedent's interest should have closed until the date of trial. We agree.

■ When a claim is presented for specific performance, and the court sitting in equity determines that such relief is appropriate, the court may also award such other relief to either party as will place all parties in the positions they would have been in had the contract been performed in a timely manner. *See Dillingham Commercial Co. v. Spears,* 641 P.2d 1 (Alaska 1982); *Eliason v. Watts,* 615 P.2d 427 (Utah 1980).

In such cases, the seller is treated as trustee of the property for the benefit of the purchaser and is liable to account for rents and profits derived from the property, and the purchaser is treated as trustee of the purchase money for the benefit of the seller and is liable to account for interest accruing thereon from the date when the closing should have taken place. *See*

*4200 Avenue K Realty Corp. v. 4200 Realty Co.,* 123 A.D.2d 419, 506 N.Y.S.2d 723 (1986); *Hutton v. Gliksberg,* 180 Cal.Rptr. 141, 128 Cal.App.3d 240 (1982).

The fact that the seller may have wrongfully repudiated the contract generally does not change this rule. *See Tri–State Mall Associates v. A.R. Realty Corp.,* 298 A.2d 368 (Del.Ch.1972); *Kubnick v. Bohne,* 56 Wis.2d 527, 202 N.W.2d 400 (1972).

■ However, an exception has long been recognized by courts of equity if the seller's breach has consisted of a willful or malicious failure to close. *See Dillingham, supra; Eliason, supra* (seller's refusal to accept purchaser's tenders of performance would have to be "willful or malicious" in order to forfeit equitable claim to interest on the purchase price); *In re Estate of Kaldenberg,* 256 Iowa 388, 127 N.W.2d 649 (1964) (general rule is subject to exception if delay in carrying out contract is due to seller's willful act); *Kreider v. Brubaker,* 371 Pa. 279, 89 A.2d 502 (1952) (vendor guilty of "wilful and vexatious delay or gross laches" not entitled in equity to recover interest on the purchase money); *Volk v. Atlantic Acceptance & Realty Co.,* 142 N.J.Equit. 67, 59 A.2d 387 (1948); *Wilcox v. Commonwealth Realty & Trust Co.,* 248 Mich. 527, 227 N.W. 678 (1929).

Here, the advisory jury determined that the bank, in establishing the option price for the limited partnership interest, was guilty of either "dishonesty, action taken in knowing disregard of the rights of another, or the failure to exercise an honest judgment." The finding of this advisory verdict was adopted by the court. While the bank disputes this finding, there is record evidence to support the trial court's finding that the bank's motive throughout its negotiations with plaintiff was a bad faith attempt to avoid the exercise of plaintiff's option rights because of the bank's reluctance to lose a lucrative investment for the estate.

Given the trial court's findings concerning this bad faith on the part of the bank, we conclude that the bank's actions in this case were "wilful" within the meaning of the exception to the general rule that a seller is entitled to interest payments from the date that the closing should have taken place. Accordingly, the trial court erred in awarding to the bank interest on the unpaid portion of the purchase price from September 1, 1986, the date the court found that the closing should have taken place, until the date of judgment.

Consequently, the bank will be entitled to interest only from the date of the trial court's decree of specific performance.

### E.

Finally, plaintiff argues that the trial judge who heard the motion for a new trial, who was not the judge who sat in the trial of the case, erred by vacating the original judge's order awarding attorney fees to plaintiff. We disagree.

■ Absent a statute or contract providing for an award of attorney fees, such fees are generally not recoverable by the prevailing party. *Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990) (attorney fees not recoverable as damages for breach of covenant not to sue). The partnership agreement did not provide for an award of attorney fees, and Colorado courts have not yet recognized an exception for cases, such as this, involving a wilful or bad faith breach of contract that does not have the effect of causing litigation with a third party. *See Wilson & Co. v. Walsenburg Sand & Gravel, Co.,* 779 P.2d 1386 (Colo.App.1989). Therefore, because there was no basis for an award of fees in this case, the trial court did not err by vacating its previous award of such fees.

The parts of the judgment granting the decree of specific performance in favor of plaintiff, dismissing plaintiff's claims for consequential damages and for breach of the covenant of good faith and fair dealing, and denying plaintiff's claim for attorney fees are affirmed. The trial court's valuation of the limited partnership interest, as well as the award to the bank of $74,000, representing undistributed profits for 1986, the award to the bank of interest from the date the closing should have taken place to

the date of judgment, and the dismissal of plaintiff's claims for tortious interference with contract are reversed, and the cause is remanded to it for further proceedings in accordance with the views expressed herein.

TURSI and ENOCH,* JJ., concur.